THE STATE v. RAVEN, *Appellant.*

### Division Two, May 2, 1893.

115   419
59a   600
115   419
82a   331
115   419
84a   211.
115       419
174   ²618
174   ²621

1. **Criminal Practice**: EVIDENCE, RES GESTÆ: DYING DECLARATIONS. On a trial for murder it was proper to exclude a statement by deceased made to a witness a week after the infliction of the injury, since it was not a part of the *res gestœ*, and it did not appear that it was made *in articulo mortis.*

2. ———: ———: GENERAL REPUTATION. The inquiry, in discrediting a witness by evidence as to his reputation, is not limited to his general reputation for truth but may be extended to his moral character.

3. ———: DELAY OF TRIAL: DISCRETION OF COURT. The trial court did not, in this case, abuse its discretion in refusing to delay the further progress of the trial to await the arrival of a witness on an incoming train.

4. **Practice** : JURY: ADDITIONAL INSTRUCTION. The court after the retirement of the jury may in a proper case, and in the presence of the attorneys of the parties, give additional instructions.

*Appeal from Marion Circuit Court.*—HON. T. H. BACON, Judge.

AFFIRMED.

*R. E. Anderson* for appellant.

*R. F. Walker*, Attorney General, for the state.

(1) The declarations of the party assaulted, made some time after the assault, although in palliation of defendant's act, are inadmissible. *State v. Jackson*, 17 Mo. 544. (2) Statements made to third parties by the injured party, subséquent to the injury, are inadmissible when alleged to have been made some time after the injury, and clearly not *in articulo mortis*. Wharton on Criminal Evidence [9 Ed.] sec. 271, p. 202; *State v. Gedicke*, 43 N. J. L. 86. (3) Our supreme court adheres to the rule that in impeaching a witness, inquiry may be extended not only to general character, but to character in respect to particular matters, as sobriety and chastity. *State v. Shroyer*, 104 Mo. 441; *State v. Rider*, 95 Mo. 486. (4) The trial court did not err in delaying the trial until the arrival of defendant's witnesses. (5) There was no error in giving the jury the additional instructions. *State v. Miller*, 100 Mo. 606; *State v. Williams*, 69 Mo. 110; *Watkin v. Com*, 9 Leigh, 678; *State v. Patterson*, 45 Vt. 308; *Martin v. State*, 51 Ga. 567; *People v. Cassano*, 30 Hun, 388.

GANTT, P. J.—The defendant was indicted on the thirteenth day of January, 1892, in the Hannibal court of common pleas. She was charged with murder in the first degree of John Washington on the twenty-third

day of October, 1891. The indictment was in the usual form and was sufficient. She was arraigned and a plea of not guilty entered and was awarded, on her application, a change of venue to the circuit court at Palmyra. She was tried at the June term and convicted of manslaughter in the second degree and her punishment assessed at five years in the penitentiary, and from this sentence she has appealed.

She has filed no brief in this court and accordingly we have examined the whole record.

From it we glean the following facts: The defendant and the deceased were both negroes, living in Hannibal, and the killing was the result of jealousy, the outgrowth of an illicit co-habitation. On the night of October 23, 1891, Maria Raven, the defendant, and another negro woman were going down Main street in the city of Hannibal when they saw John Washington, the deceased, in company with a negro woman across the street, going in the opposite direction. From what subsequently transpired, it appears that the deceased and the defendant had been living together as man and wife. When the defendant saw the deceased in company with another woman, she rushed across the street, caught him by the lapel of the coat, and began a tirade of abuse. A fight ensued, in which he struck her several times with his fist, and she threw three paving bricks at him. The first and second missed him, and the third struck him across the front and left side of the head, felling him to the ground. She then ran away. He got up, staggered to a stairway near at hand, sat there bleeding from the mouth and nose for a time, was then helped to his feet, walked down the street about half a block, when he again had to sit down and rest for a time. He was then helped to his feet, and with difficulty got to his lodging, some three or four blocks from where he was struck. He laid there unconscious

for three or four days. Doctors were called in, who prescribed bromides and remedies to reduce fever. After the third or fourth day he regained consciousness and improved so much that he walked down in the city and consulted his physician. About the end of the second week he went to work again, complaining, however, of great pain in his head. He only worked five days when he again relapsed into unconsciousness, and died November 15, 1891. A *post mortem* examination revealed a large triangular fracture of the skull, on the left side of his head. At its base a large quantity of pus was formed and the brain greatly inflamed. The physicians who attended him and made the *post mortem* testified the wound was almost necessarily mortal and unquestionably caused his death.

I. The case was well tried. The questions were simple, and but very few objections to testimony were made or became necessary. The defendant offered to prove a statement of deceased in a conversation with one of the witnesses with deceased the week after he was struck, to which the prosecuting attorney objected and the court excluded it. In so doing the court committed no error. John Washington was not a party to this prosecution, and his admissions were but hearsay, and hence clearly inadmissible. If his supposed declarations had been made *in articulo mortis* or had constituted a part of the *res gestae*, they might have been admissible, under the exceptions to the admissibility of hearsay evidence, but no such foundation was laid for them in this case. *McMillen v. State*, 13 Mo. 30; *State v. Dominique*, 30 Mo. 585; *State v. Simon*, 50 Mo. 370; *State v. Jackson*, 17 Mo. 544; *State v. Gedicke*, 43 N. J. L. 86-93; Wharton's Criminal Evidence, sec. 262.

II. Counsel for the state offered and the state admitted evidence over the objection of defendant, to

show the general reputation of defendant's witnesses and of defendant herself, after she had testified, as to truth and chastity, and to this she saved her exceptions. As to this assignment, we see no reason for departing from the rule heretofore announced by this court that the inquiry may be extended not only to the general reputation of the witness for truth and veracity, but to the character of the witness in respect to general moral character. *State v. Miller*, 71 Mo. 590; *State v. Grant*, 76 Mo. 236; *State v. Rider*, 95 Mo. 486; *State v. Shroyer*, 104 Mo. 441; 30 Cent. Law Jour. 241.

III. After the evidence was all in, counsel requested the court to delay the trial until the arrival of a train on which they expected one Green Hutchinson, by whom they expected to prove that John Washington was killed by a blow with a beer bottle, after he had been struck by defendant. The application was not accompanied by an affidavit, and the record affirmatively shows, that, as a matter of fact, said supposed witness was not on said train and did not come to Palmyra, and the instructions were not completed unti- after the arrival of the train. It is very clear that there was no abuse of discretion in not delaying the cause under such circumstances.

IV. The learned trial judge gave instructions, defining murder in the first and second degree, and manslaughter in the third and fourth degree, and for self-defense. After the jury had been out for nearly half of the day, they requested in a written inquiry to the court in the presence of defendant and her counsel information as to whether there was a degree of punishment between murder in the second degree and manslaughter in the third degree. The court thereupon prepared an instruction correctly defining manslaughter in the second degree. To the giving of this instruction in this way and at this time, defendant's counsel

objected. Thereupon the trial court offered to reopen the case for argument, upon all the instructions, this as well as others, which offer the defendant declined, and the court overruled the objection and gave the jury the additional instruction. They retired, and afterwards returned a verdict of guilty of manslaughter in the second degree.

That the jury may request further instructions under proper circumstances in open court, and in the presence of counsel for both sides, we think there is no doubt. That in this case, the trial court was exceedingly careful of the rights of defendant, the record affords no cause for doubt. The instruction was not only proper, but we think the trial court would have erred had he failed to give it. *State v. Gassert*, 65 Mo. 352; *State v. Linney*, 52 Mo. 40. The facts make a case strikingly similar to those in *State v. Gassert*, which this court reversed for failure to give an instruction for manslaughter in the second degree.

We find no reason for interfering with the verdict of the jury. The judgment is affirmed. All of this division concur.