Rush *v.* State

5148                                                                 395 S. W. 2d 3

Opinion delivered November 1, 1965.

*Van B. Taylor, Donald Poe, Hardin, Barton, Hardin & Jesson,* for appellant.

*Bruce Bennett,* Atty. General, By: *Fletcher Jackson,* Asst. Atty. General, for appellee.

Ed. F. McFaddin, Associate Justice. The appellant, Fred Rush, was convicted of second degree murder in the killing of his stepfather, Paul Rush; and there is this appeal. This is the second time this case has been before us. The first appeal was in *Rush* v. *State,* 238 Ark. 149, 379 S. W. 2d 29 (Opinion of May 18, 1964), wherein Fred Rush had been tried in the Sebastian Circuit Court and convicted of first degree murder and sentenced to life imprisonment. We reversed for the reasons stated in the Opinion and remanded the cause for new trial. Of course, on the second trial the greatest punishment the defendant could have received would have been life imprisonment.[1] *Sneed* v. *State,* 159 Ark. 65, 255 S. W. 895.

---

[1] Our holding in *Sneed* v. *State* is because of the wording of Ark. Stat. Ann. § 43-2153 (Repl. 1964). The holdings in some other jurisdictions are contrary to our holding. See *Stroud* v. *U. S.,* 251 U. S. 15, 64 L. Ed. 103, 40 S. Ct. 50.

On remand the case was transferred to Scott County, where Rush was tried and convicted of second degree murder; and from that judgment there is this appeal. The motion for new trial contains 53 assignments of error, but appellant's counsel have confined the argument to three points, which we now list and will discuss in the same order:

"I. The Court Erred in Refusing to Direct a Verdict of Acquittal.

"II. The Court Erred in Refusing to Admit Defendant's Exhibits 'G' and 'H'.

"III. The Trial Court Erred, and Denied Appellant his Constitutional Rights to a Fair Trial, in Instructing the Jury on Lesser Degrees of Homicide after the Case had been submitted to the Jury for more than 28 hours."

I.

The information filed by the Prosecuting Attorney on March 14, 1963 charged "the defendants, Frederick L. Rush, Raymond Wood, and Carolyn Brown, of the crime of murder in the first degree committed as follows, to-wit: the said defendants in the County, District, and State aforesaid, on the 13th of May, 1962, did unlawfully, wilfully, and feloniously and with premeditation and malice aforethought kill and murder Paul Rush by shooting him with a gun against the peace and dignity of the State of Arkansas."

The defendants sought and obtained a severance, and each was tried separtely. In both the first trial and the present trial of Fred Rush the State insisted that Fred Rush, Raymond Wood, and Carolyn Brown had formed a conspiracy to kill Paul Rush; that in keeping with the conspiracy Carolyn Brown drove the getaway car for Raymond Wood so he could flee without being seen after the murder; that Fred Rush lured Paul Rush to the basement of the V. & R. Sales Company building; that Raymond Wood fired the shot that killed Paul Rush and also fired a shot into the arm of Fred Rush to pro-

vide him with a better defense against being suspected of the murder of Paul Rush.

When this theory of the State was announced by the Prosecuting Attorney in his opening statement to the jury in the present case, the defendant moved for an acquittal, which motion was denied. The basis of the motion for acquittal was because the State had to admit that Raymond Wood and Carolyn Brown had each been acquitted of the murder of Paul Rush; and therefore since Raymond Wood was the man who fired the fatal shot and had been acquitted, Fred Rush could not be convicted. In other words, the defendant took the position that Fred Rush was at most an accessory to the killing that Raymond Wood committed, and that the acquittal of Raymond Wood as the actual murderer *ipso facto* worked the acquittal of Fred Rush.

We find no merit in the appellant's position. Under the evidence a jury could have found that Fred Rush was present, aiding and abetting in the killing, and without his work there would have been no killing. At the General Election in 1936 the People of Arkansas adopted[2] Initatied Act No. 3, captioned, "An Act to Amend, Modify, and Improve Judicial Procedure and the Criminal Law, and for Other Purposes." Section 25 of that Act, now found in Ark. Stat. Ann. § 41-118 (Repl. 1964), reads:

"ACCESSORIES AND PRINCIPALS. The distinction between principals and accessories before the fact is hereby abolished, and all accessories before the fact shall be deemed principals and punished as such. In any case of felony, when the evidence justifies, one indicted as principal may be convicted as an accessory after the fact; if indicted as accessory after the fact, he may be convicted as principal."

Some of our cases considering the 1936 Initiated Act are Wilkerson v. State, 209 Ark. 138, 189 S. W. 2d 800; *Fields* v. *State,* 213 Ark. 899, 214 S. W. 2d 230; and *Lauderdale*

---

[2] The full text of this Act may be found on Page 1384 *et seq.* of the Acts of 1937.

v. *State*, 233 Ark. 96, 343 S. W. 2d 422. In each of these cases we held that one who stands by, aids, and abets, may be tried as a principal. So when the State offered testimony that Fred Rush was standing by, aiding and abetting in the murder of Paul Rush, he could be tried as a principal regardless of what had happened in the cases of the State against Raymond Wood and Carolyn Brown.

## II.

The appellant's second point relates to the refusal of the Trial Court to allow the defense to introduce in evidence certified copies of the judgments of acquittal of Raymond Wood and Carolyn Brown. As heretofore stated, Fred Rush, Raymond Wood, and Carolyn Brown were charged with the murder of Paul Rush; and each defendant claimed and received a severance. After the first trial of Fred Rush the State then tried Raymond Wood and he was acquitted on May 25, 1963. The State then tried Carolyn Brown and she was acquitted on July 11, 1963. At the present trial of Fred Rush he sought to introduce in evidence a certified copy of the judgment of acquittal of the said Raymond Wood, and a certified copy of the judgment of acquittal of Carolyn Brown. These were the Exhibits G and H, referred to heretofore. The Trial Court refused to allow such exhibits to be introduced, and the correctness of such ruling is the point now argued.

The Trial Court was correct. We do not know what the evidence was in either the Wood trial or the Brown trial. We do not know what the instructions were in either of those cases. To allow a certified copy of a judgment of acquittal to be introduced would shed no light on the evidence in those cases. In *Smith* v. *Dean,* 226 Ark. 438, 290 S. W. 2d 439, there was an attempt to introduce a certified copy of a judgment in a criminal case to support a claim against a party in a civil case. The Trial Court refused to allow such certified copy to be introduced; and in affirming the ruling we said:

"At the trial below the appellees introduced a certified copy of the judgement of conviction, but it is the settled

rule in this State that such a judgment is not admissible to prove the fact on which it was based. *Horn* v. *Cole, supra; Washington Nat. Ins. Co.* v. *Clement,* 192 Ark. 371, 91 S. W. 2d 265.''

In *People* v. *Kief,* 126 N. Y. 661, 27 N. E. 556, the situation was quite similar to the one in the case at bar. There, the defendants were jointly charged but tried separately. The copy of the judgment acquitting one defendant was held to be inadmissible when offered at the trial of the other defendant. The reasoning of the New York Court is so clear that we quote at length:

''But with the change effected by the Penal Code the distinction between principal and accessory disappeared, and thenceforward he who aided, abetted, or counseled in the commission of a crime became equally guilty with him who committed it, and could be indicted, tried, and convicted as a principal. If it is immaterial, therefore, upon the question of his guilt, whether a party, engaged in the commission of a felony, directly committed the crime alleged, or only abetted in its commission, it must be quite immaterial whether one jointly indicted with him for the offense has been acquitted or not. The question of the one defendant's guilt cannot turn upon the establishment of the other's guilt; it is an independent issue, to be tried out alone. . . . ''Now, the fact that Carrie Howard [the other indicted person] had been acquitted or convicted could not legally prove anything for or against this defendant, for he was not a party to that record. The general principle upon which the admissibility of evidence rests is its relevancy or its tendency to establish the issue upon trial. Carrie's acquittal would not prove this defendant's innocence of the charge in the indictment. At the most it would only prove that, being tried first, for some reason, she escaped conviction at the jury's hands.''

The Supreme Court of Massachusetts in *Commonwealth* v. *Tilley* (Mass.), 99 N. E. 2d 749, in reaching the same conclusion as the New York Court, stated that what happened in the case of the other defendant was *''res inter alios acta''* in the trial of the current defendant.

In line with these cases, we hold that the Trial Court committed no error in refusing to allow the Exhibits G and H to be introduced.

## III.

The third point by the appellant relates to the action of the Court in waiting until the jury had been out 28 hours before giving an instruction on second degree murder. Originally the Court instructed the jury that they should either find the defandant guilty of first degree murder or acquit him. The State requested no instruction on second degree murder, and none was given.

The case was submitted to the jury at 2:00 P.M. on January 29, 1965 on the sole issue of guilt or innocence of first degree murder. At 8:00 P.M. the jury announced that it was "hung." The Court at that time inquired of the foreman as to how the jury stood numerically, and the foreman replied, "ten and two." After further deliberation that night the jury was sent back to the motel for a night's rest, and returned to the Court for further deliberation at 9:00 A.M. Saturday, January 30, 1965. At 11:30 A.M. the jury returned to the courtroom, where inquiry was made by the Court as to progress in their deliberations; and the foreman announced, "We are locked." Thereupon, the Court proceeded to give the jury the so-called "get-together" instruction, which has been sanctioned in many cases.

The jury then returned to its deliberations until 12:45 P.M., at which time the jury went to lunch and then returned for further deliberations. At 3:50 P.M. the jury was again returned into Court and announced that they were hung. The Court said to the jury: "Are there any questions that you all have you feel you might properly ask the Court, or are there any questions pertaining to the law in this matter?" The foreman replied: "We have our instructions in there with us. Is that right?" The Court said, "Yes." The foreman then said: "I believe it is clear. We have the instructions and they are final in the ways to go?" The Court: "Those instructions embrace the basic law and they are final in

that respect and I will be frank with you, I don't know of any way I can enlarge upon them or explain them. If there is some particular part that you don't understand the legal terms or terminology that you don't understand, I might be able to help you with that. If the questions are put to me as to the forms of verdict I cannot. offer you any alternative on that.''

The jury took a brief rest and at 6:00 P.M. the Court called the jury back into the courtroom and, over the objection of the defendant, instructed the jury on second degree murder and manslaughter. The defendant's counsel said: ''I am going to object to the giving of such instructions at this time; to the Court's instruction on second degree murder, on the ground that this lawsuit has been tried solely upon the theory that it was murder in the first degree, or that the man was innocent; and at this late stage, after the evidence has been adduced, instructions given, arguments made, and the jury has been out better than 26 hours and deliberated a great deal of time . . .''

At all events, the Court gave an instruction on second degree murder and manslaughter at 6:00 P.M. Saturday January 30, 1965; and at 7:00 P.M., one hour later, the jury brought in the verdict of guilty of murder in the second degree and fixed the punishment at twelve years in the penitentiary.

We cannot put the stamp of approval on the action of the Court in first ascertaining that the jury was hopelessly deadlocked on first degree murder, and then offering a charge on second degree murder. It was almost the same as ''bargaining'' with the jury. It is not a question of whether the Court should have given the instruction on second degree murder at the time the other instructions were given: the question, here, is the challenge to the Court's action, in waiting 28 hours and ascertaining that the jury was deadlocked, and then charging the jury on a lesser degree of the offense.

We find no Arkansas case directly in point on this, but we have found cases from other jurisdictions that bear on the matter. In *People* v. *Stouter* (Calif), 75

P. 780, the defendant was charged with a "lascivious act on the body of a child under the age of 14 years." He was tried for that offense and at conclusion of the evidence the Court told the jury it should render one of two verdicts: either guilty as charged, or not guilty. The jury retired at 9:00 P.M. on January 18th and was out fourteen hours without being able to agree. The jury came in and asked if the verdict must be either guilty or innocent, to which the Court gave an affirmative answer. Twenty-four hours after the case had been submitted to the jury they announced that they could not agree; and then, for the first time, the Court gave a new instruction to the jury to the effect that the defendant might be found guilty of an attempt to commit the crime charged; and a form of verdict was offered the jury on that phase of the case. In a very short time the jury returned a verdict of guilty of attempt to commit the crime. In holding that the Trial Court had committed error, the Supreme Court of California said:

"There is no doubt of the general rule that after a jury have retired for consultation they may be called into court for further instructions; but we think that it was erroneous and unfair to defendant to give the last instruction as to the attempt, at the time and under the circumstances at and under which it was given. The jury had been out for a very long time without being able to agree under the instructions which had been given them, and which had been on subsequent occasions repeatedly reiterated, and many of the jurors had practically told the court what their opinions were, and that if the instructions were changed so as to meet their views they could find a verdict of guilty, contrary to the former instructions. The project of instructing the jury for the first time, after they had been unable to agree for 24 hours, that they might, notwithstanding the former instructions, convict the defendant of the attempt, was clearly an afterthought suggested by the statements of the jurors as to how they then stood, and apparently intended to help them, not generally to arrive at a verdict, but to arrive at some sort of a verdict of guilty. Such a proceeding is, we think, a most dangerous inter-

ference with the right of a defendant to a fair trial. . . . Jurors exhausted by a long confinement, and naturally desirous of being released, are not in a suitable frame of mind to thoroughly consider an entirely new phase of the case under a new instruction which might fairly be construed as an expression of the court hostile to the defendant."

In the case of *State* v. *Anderson* (W. Va.), 185 S. E. 212, the Supreme Court of West Virginia had before it a case wherein the defendant was tried for murder and the Court instructed the jury that it must bring in one of three verdicts: murder in the first degree, murder in the second degree, or not guilty. After the jury had deliberated parts of two days and been unable to agree, the Court then instructed the jury on manslaughter; and the jury promptly rendered a verdict of manslaughter. The Supreme Court of West Virginia held that the Trial Court had committed an error prejuricial to the rights of the defendant in giving the instruction of the lesser offense under the facts and circumstances in the case.

In *Brown* v. *Commonwealth* (Ky.), 224 S. W. 362, the defendant was charged and tried for "detaining a female against her will for the purpose of having carnal knowledge of her." After the jury had deliberated for some time and informed the Trial Court of inability to agree on a verdict, the Court, for the first time, instructed the jury on assault and battery. A verdict was quickly returned for such lesser offense. The Court of Appeals of Kentucky held that the action of the Trial Court was improper in giving such additional instructions at the time and under the situation existing. In 16 C. J. p. 1089, and also in C. J. S. Vol. 23A, p. 1004, the text reads:

"It is error to give a new instruction covering a different phase of the case, after the jury have been deliberating for some time and have had the instructions repeated to them, but are unable to reach a verdict."

After carefully studying the record in this case, we are thoroughly convinced that when the Court gave the

instruction on second degree murder it had the effect of bargaining with the jury, and that the Court violated the rights of the defendant in giving the instruction after first ascertaining that the jury was unable to reach a verdict on the charge of first degree murder. For this error we reverse the judgment and remand the case for a new trial.