STATE of Missouri, Respondent,

v.

David Lee AMOS, Appellant.

No. 59774.

Supreme Court of Missouri,
En Banc.

July 11, 1977.

Rehearing Denied July 11, 1977.

Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Robert Presson, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

On application of appellant David Lee Amos, this appeal was transferred by this court after opinion in the Missouri court of appeals, Kansas City district, pursuant to art. V, sec. 10, Mo.Const., as amended 1970, and Rule 83.03. The principal reason for transfer was to consider whether the trial court erred in giving an additional verdict-directing instruction—murder in the second degree—after the jury had deliberated for about four hours and after the jury had requested the court to define the clause appearing in the murder-in-the-first-degree instruction which states, "and reflected upon the matter coolly and fully before stabbing her." The jury wanted the court to compare these words with "premeditation".

Appellant contends (1) the evidence was insufficient to support a verdict of murder in the second degree, (2) the trial court erred in instructing the jury on murder in the second degree after the jury had deliberated for about four hours, (3) the court erred in failing to instruct on manslaughter, and (4) by pro se brief that he is entitled to release because he was charged only with murder in the first degree but was convicted of murder in the second degree.

Briefly stated, the state's evidence in part was: The victim, Josephine Foster, was found stabbed to death in her first-floor apartment at 3126 Forest, Kansas City, Missouri, on May 20, 1974. Appellant occupied an apartment in the same building and was in the building on the afternoon of May 19, 1974. His presence was thereafter unaccounted for until he was next seen in Chicago, Illinois, where his mother lived.

A forensic pathologist who performed an autopsy on the body at about 2:00 p. m. on May 20, 1974, testified that the victim died sometime during the afternoon of May 19, 1974, give or take a few hours, and the cause of death was multiple stab wounds in the victim's chest which penetrated the aorta.

■ Emma Mae Lee, with whom appellant lived after arriving in Chicago, Illinois, testified appellant told her he left Kansas City because he "stabbed this white lady" because she refused to give him some money he had requested. According to the witness, appellant said the lady's first name was Josephine.

Appellant's argument on the issue of the insufficiency of evidence consists of an attack upon the credibility of the witness Emma Mae Lee. Her testimony constituted direct evidence that the appellant killed the deceased. The court has examined the transcript and concludes that the credibility of this witness was for the jury to determine. The point is overruled.

Appellant's second point is that the court erred in giving the jury the instruction on murder in the second degree after the jury had deliberated for over four hours in response to an inquiry by the jury about a portion of the murder-first-degree instruction. Appellant argues the giving of the murder-second-degree instruction at this stage of the proceedings was overly suggestive of the verdict to be returned and was inherently coercive upon the jury to the prejudice of appellant.

The case was submitted to the jury on murder in the first degree only. The position of the defense throughout the case was that appellant did not kill the deceased. The murder-first-degree instruction is MAI–CR 6.02 and reads as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on the 19th day of May, 1974, in the County of Jackson, State of Missouri, the defendant caused the death of Josephine Foster by stabbing her, and

Second, that the defendant intended to take the life of Josephine Foster, and

Third, that the defendant considered taking the life of Josephine Foster and reflected upon this matter coolly and fully before stabbing her,

then you will find the defendant guilty of murder in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of murder in the first degree, you will fix his punishment at imprisonment by the Department of Corrections during his natural life."

At 4:25 p. m., after approximately four hours of deliberation, the jury sent the following message to the trial judge:

"Judge Moore, the jury has requested the interpretation of the third point of Instruction No. 4, specifically,

'and reflected upon this matter coolly and fully before stabbing her,' would you define this third point for us? Would you compare this with premeditation? Signed: Robert Griffle, Jury Foreman."

In chambers, the trial judge showed this note to counsel for both sides and advised them he could not give a further definitional instruction because MAI–CR 6.02 was intended to be given without further definition. The court having given consideration to sec. 559.030, RSMo 1969 (repealed by Laws 1975, p. ——, H.B. 150, sec. A), which required the jury to inquire, "and by their verdict ascertain, under the instructions of the court, whether the defendant be guilty of murder in the first or second degree", tentatively decided to instruct on murder in

the second degree, MAI–CR 6.06. The court stated:

"Now, of course, I want counsel for both the State and the defendant to have the opportunity to comment on the proposed procedure, now maybe I should say that since I have had this note, *I will make one more inquiry of the jury in open Court, whether this is still a problem, the question in their inquiry. And if they are still in difficulty, I will give the instruction as No. 12, that I just indicated.* With that background in mind, I will call first on the State as to any comment or objection or combination." (Emphasis supplied.)

The procedure was agreeable to the state but appellant objected to the giving of the murder-second instruction. The court overruled appellant's objection, noting that "the inquiry will be made as indicated and it might become academic, . . ."

The court offered both sides the opportunity for brief additional argument if the instruction was given, which offer was declined. The jury was then brought into the courtroom and the following proceedings were had:

"THE COURT: The Court has received the message from the jury, and it has been read into the record; and counsel is familiar with that relating to a portion of Instruction No. 4. Is the situation, Mr. Griffle, unchanged from the time the note was sent?

"JURY FOREMAN: Yes, Your Honor; it is unchanged.

"THE COURT: Very well; then the Court will give you an additional instruction at this time."

Instruction No. 12 (MAI–CR 6.06) was then read to the jury and, after a minor correction was made, the jury again retired to deliberate. At 4:45 p. m., the jury returned its verdict finding appellant guilty of murder in the second degree.

"[A]s a general rule it is regarded as within the province of the court to recall the jury and give them further instructions, when in the exercise of a proper discretion it regards it as necessary to do so in the furtherance of justice, and the court in its sound discretion may give additional instructions without the request of the jury . . . ." 23A C.J.S. Criminal Law § 1376, p. 998. It is therefore incumbent upon us to determine whether the trial court abused its discretion in giving the additional instruction.

The court of appeals decided the instant case under what it interpreted as the compulsion of *State v. Raven,* 115 Mo. 419, 22 S.W. 376 (1893). In *Raven* the jury was instructed on murder in the first and second degrees, manslaughter in the third and fourth degrees, and self-defense. After the jury had been deliberating for half a day they made "a written inquiry to the court, in the presence of defendant and her counsel" for "information as to whether there was a degree of punishment between murder in the second degree and manslaughter in the third degree." 22 S.W. 377. Over the objection of the defendant the court gave the jury an additional instruction on manslaughter in the second degree. The jury returned to its deliberation with this additional instruction and subsequently returned a verdict of manslaughter in the second degree. With respect to the giving of an additional instruction, the court said at 377:

"That the jury may request further instructions under proper circumstances in open court, and in the presence of counsel for both sides, we think there is no doubt. That in this case the trial court was exceedingly careful of the rights of defendant, the record affords no cause for doubt. The instruction was not only proper, but we think the trial court would have erred had he failed to give it. *State v. Gassert,* 65 Mo. 352; *State v. Linney,* 52 Mo. 40. The facts make a case strikingly similar to those in *State v. Gassert,* which this court reversed for failure to give an instruction for manslaughter in the second degree. We find no reason for interfering with the verdict of the jury."

Our research and counsel's research have not uncovered any other cases in Missouri

directly on this point. However, we have been cited to a few cases dealing with this issue from other jurisdictions. These cases include *Rush v. State,* 239 Ark. 878, 395 S.W.2d 3 (1965); *People v. Stouter,* 142 Cal. 146, 75 P. 780 (1904); *People v. Jennings,* 22 Cal.App.3d 945, 99 Cal.Rptr. 739 (2d Dist. 1972); and *State v. Anderson,* 117 W.Va. 265, 185 S.E. 212 (1936).

In *Rush* the jury had been deliberating for twenty-eight hours on a sole instruction on first-degree murder and had three times announced to the court they were "hung" when the court on its own motion instructed the jury on murder in the second degree. One hour later the jury returned a verdict of guilty of murder in the second degree. The Supreme Court of Arkansas reversed and remanded the case primarily because the trial court had waited twenty-eight hours and ascertained the jury was deadlocked before charging them on the lesser degree of homicide. This, according to the court, was tantamount to "bargaining" with the jury.

In *Stouter* the defendant was charged with having committed a "lewd or lascivious act upon or with the body 'of a child under the age of fourteen years' ". The trial court initially instructed the jury to find the defendant guilty or not guilty of this charge. After the jury had twice announced to the court they were deadlocked and had deliberated for twenty-four hours, the court gave the jury an additional instruction on attempt to commit the crime charged. The jury then retired again and returned a guilty verdict against defendant on the attempt. The Supreme Court of California held the trial court had committed reversible error and in an often-quoted passage stated at 781 of 75 P.:

> "There is no doubt of the general rule that after a jury have retired for consultation they may be called into court for further instructions; but we think that it was erroneous and unfair to defendant to give the last instruction as to the attempt, at the time and under the circumstances at and under which it was given. The jury had been out for a very long

time without being able to agree under the instructions which had been given them, and which had been on subsequent occasions repeatedly reiterated, and many of the jurors had practically told the court what their opinions were, and that if the instructions were changed so as to meet their views they could find a verdict of guilty, contrary to the former instructions. The project of instructing the jury for the first time, after they had been unable to agree for 24 hours, that they might, notwithstanding the former instructions, convict the defendant of the attempt, was clearly an afterthought suggested by the statements of the jurors as to how they then stood, and apparently intended to help them, not generally to arrive at a verdict, but to arrive at some sort of a verdict of guilty. Such a proceeding is, we think, a most dangerous interference with the right of a defendant to a fair trial. We do not know what occurred in the jury room. Some of the jurors may have believed the evidence too slight to convict the defendant of any offense, and, for the purpose of argument, may have admitted that he might have been convicted of the attempt if the former instructions had allowed it, and after the last instruction had been given may have been embarrassed by their former admissions. Moreover, the jury might very well have considered the last instruction as an intimation of the desire of the court that the defendant be convicted of some offense. Jurors exhausted by a long confinement, and naturally desirous of being released, are not in a suitable frame of mind to thoroughly consider an entirely new phase of the case under a new instruction which might fairly be construed as an expression of the court hostile to the defendant."

The Supreme Court of California also commented that the evidence did not show an attempt.

In *Jennings* the jury was originally instructed on assault with intent to commit murder. The jury returned to court twice for further instructions and for a re-reading of some already given. The further in-

structions all related to the verdict director on assault with intent to commit murder. When the jury returned for a third time they informed the court they were unable to reach a verdict because they could not agree on the element of intent to murder. The trial court on its own motion over the defendant's objection instructed the jury on simple assault and assault with a deadly weapon. The jury retired and after twenty minutes returned with a verdict of guilty of assault with a deadly weapon. The court of appeals found no difference between this case and *Stouter* and reversed the case for a new trial.

In *Anderson* the jury was instructed originally on murder in the first and second degree. After the jury had deliberated for approximately two days, the court recalled the jury and gave them an additional instruction on voluntary manslaughter. The jury then returned a verdict of guilty of voluntary manslaughter. The Supreme Court of West Virginia reversed and remanded the case relying heavily on *Stouter.* The court was of the opinion that a jury under the circumstances presented here is apt to seize on the later instruction and give it more weight then it should actually be accorded. Additionally, the court expressed a fear that a jury may take the belated instruction as an indication from the trial court as to its opinion of the defendant's guilt.

As noted by the state in its brief, the court in *Raven* did not deal with the issue at any great length. In citing and relying upon *State v. Gassert,* 65 Mo. 352 (1877), the court in *Raven* seems to proceed on the basis that if the additional verdict-directing instruction is one that should or could have been given at the outset then no error is committed in giving it belatedly. But that is not a sufficient answer. The issue here is not whether a murder-second-degree instruction was warranted at the outset but, rather, whether the giving of the instruction at the time and under the circumstances prejudiced the appellant.

In *Anderson* the court reversed even though the defendant had originally re-

quested but the trial court refused the voluntary manslaughter instruction which was later given during the jury deliberations. The prejudice occurred because the late giving of the instruction, the court believed, was calculated to influence the jury to return a guilty verdict.

Likewise in *Jennings* the court held the giving of a simple assault and another assault instruction after the jury had deliberated approximately twenty-four hours was prejudicial error even though there was no contention that it would have been improper if given at the outset.

The outstate cases cited recognize that the giving of a verdict director on a lesser offense after the jury has deliberated and is experiencing difficulty in reaching a verdict is essentially coercive or at least persuasive on the jury to convict of the newly submitted offense. And it is reasonable to think that a jury could view the later instruction as an easy way out of their difficulties in reaching a decision.

■ In the instant case the jury was having difficulty with one of the elements of first-degree murder and after four hours they had not agreed upon a verdict. The length of time a jury is out will vary from case to case and may or may not be significant. In any event, it is clear that in the instant case the court believed the jury deliberations had become stalled. The record shows the court decided to give the murder-second-degree instruction *only* if the jurors had *not* resolved their problem. To this end the court asked the foreman if the jury's situation remained "unchanged from the time the note was sent" and the foreman replied affirmatively. Just exactly what their problem was is not clear nor is it clear as to how the murder-second-degree instruction answered the jury's inquiry. What is clear is that the jury's deliberations had bogged down and in response to their inquiry the court gave the murder-second-degree instruction; thereafter, the jury returned their verdict of guilty in a very short time—probably not· over ten minutes at the most.

As we stated supra, *Raven* simply ignores or avoids the real problem involved with the giving of verdict-directing instructions after the jury has begun its deliberations as recognized in *Jennings, Stouter, Anderson* and *Rush.* The prejudice, if any, arises from the timing and circumstances under which the instruction is given and is somewhat difficult to assess because the court must undertake to say what the effect of such an action would reasonably be upon a jury.

Although the state argues that the jury in the instant case was not deadlocked, it is clear that the jury was at least stalled in their deliberations and that the murder-second-degree instruction was given in an effort to get their deliberations going again. That effort succeeded as the appellant was promptly found guilty of the newly submitted offense. Did the jury understand the second-degree-murder instruction, given as it was in response to their inquiry about premeditation, to obviate their problem by simply submitting a new offense in which premeditation was *apparently* not an element? Or did the jury understand the action of the court in responding to their inquiry by submitting a new homicide offense to mean that they should find the appellant guilty of murder second if they were having difficulties with murder first degree? We do not mean to suggest the trial judge actually intended any such meanings but it is to say that jurors could reasonably have attached such meanings to the giving of the belated verdict-directing instruction in a response to their inquiry.

In the instant case the court's response actually did not answer the inquiry of the jury; it simply submitted a new and theretofore unmentioned offense for which the jury could find the appellant guilty. The circumstances under which the second-degree-murder instruction was given here are similar to those in *Jennings, Stouter, Anderson,* and *Rush,* and in each of these cases the court held that prejudicial error occurred. Other than *Raven,* there are no cases cited, nor have we found any, where courts have approved the giving of additional verdict-directing instructions after a jury has begun deliberating and in response to an inquiry when the jury's deliberations have bogged down.

The court holds that under the circumstances of this case it was prejudicial error to have given the murder-second-degree instruction. To the extent that *Raven* holds otherwise, it is overruled.

However, it would not be appropriate to adopt a per se rule—a rule which would declare the belated giving of any instruction (except, of course, MAI–CR 1.10, 4.50–4.54, see MAI–CR, p. xviii, par. D. 14–15) to be prejudicial error. It obviously is not desirable to give any instructions piecemeal, much less verdict-directing instruction, as this tends to over-emphasize the later-given instruction. But situations can easily be foreseen where a court may inadvertently fail to give a required instruction at the outset, realize it a few minutes later, and recall the jury and give the instruction. Prejudice would not necessarily result but would depend upon the circumstances under which the new verdict-directing instruction was given and would have to be judged on a case-by-case basis.

The state's brief evidences a sense of frustration over what a court can do when it receives an inquiry as in the instant case and not err in the process. Obviously the desire is to answer the inquiry in order to assist the jury. Nevertheless, in most instances, including the present case, the jury should simply be referred to the instructions previously given. The jury may remain deadlocked and the case may not be decided by that jury. Undesirable as a hung jury and retrial is, it is still better than a coerced verdict.

For the error set forth, the case must be reversed and remanded for a new trial.

Appellant's next point is that the court erred in failing to instruct on manslaughter when the court, by its own motion, instructed on murder in the second degree. The court need not decide the point because on retrial the MAI–CR notes on use under MAI–CR 6.02 will be followed.

■ Appellant by way of a pro se brief claims that since he was indicted for murder in the first degree he could only be found guilty or not guilty of that offense. Appellant though is mistaken since a charge and proof of murder in the first degree by definition includes and supports a definition of murder in the second degree. *State v. Varner,* 329 S.W.2d 623 (Mo.1959).

Reversed and remanded for new trial.

All of the Judges concur.