JAMES R. SPEARS & SPEARS CONSTRUCTION Co., INC. *v.* JOHN W. RICH ET UX

5-6040                                                 486 S.W. 2d 1

*Thomas E. Sparks* and *Wright, Lindsey & Jennings,* for appellants.

*Gaughan, Laney, Barnes, Roberts & Harrell,* for appellees.

JOHN W. RICH ET UX *v.* JAMES R. SPEARS & SPEARS CONSTRUCTION Co., INC.

5-6064

254

*Gaughan, Laney, Barnes, Roberts & Harrell,* for appellants.

*Thomas E. Sparks* and *Wright, Lindsey & Jennings,* for appellees.

Opinion delivered October 16, 1972

[As Amended on denial of Rehearing Nov. 20, 1972.]

LYLE BROWN, Justice. John W. Rich and wife, Audrey E. Rich, initiated this action against James R. Spears and Spears Construction Co., Inc., to establish their alleged ownership of a substantial amount of stock in the corporation. Spears contended that he was the sole owner and that the Riches were each issued one share of qualifying stock solely for the purpose of incorporation. The chancellor held that the Riches own 49% of the stock. That was in case number 5-6040. The only issue in that appeal is the contention that the chancellor's findings were against a preponderance of the evidence. Subsequent to the entry of the decree the chancellor modified it by an order permitting Spears to operate the corporation as the majority stockholder, making such expenditures for capital assets and payment of bonuses and salaries as were proper. To obtain that order Spears posted a supersedeas bond. The Riches objected to the modification and were overruled. They lodged an appeal from the modification and that case is here numbered 5-6064. We shall refer to Spears and Spears Construction Co., Inc., as appellants and to the Riches as appellees, and shall treat the cases as a unit, they having been consolidated here by agreement.

The three individuals here involved were experienced in the dry kiln manufacturing business. They had all worked for Russell Dry Kiln Company in Fordyce. In January 1965 a new dry kiln company was started, known as Spears Construction Company, with which all three parties were connected. Spears contends that he was the sole owner of the business, that John Rich was the welder on an hourly basis, and that Audrey Rich was the bookkeeper on a weekly salary. Spears contends further that a corporation was formed in August 1965 and that a qualifying share was issued in the name of each of the Riches. On the other hand the Riches contend that the business was started as a partnership, with each making a contribution to the capital; that it was agreed that Spears would own 51% and the Riches, 49%; and that when the corporation was formed the parties each took only one share of stock. The problem boils down to the nature and origin of the association.

Audrey E. Rich related in detail her version of the organization of the dry kiln company, and the salient testimony is herein summarized. In January 1965, the Riches and Spears decided to start a dry kiln business. The business was a partnership but was set up on the books as a sole proprietorship. Mr. Spears contributed $500 in cash, Mrs. Rich contributed office equipment (for which she was later reimbursed by the corporation), and her husband contributed his welding equipment and a pickup truck. Mrs. Rich maintained the books and records at her home. In August 1965 the parties knew the company was going to show considerable profit, so it was decided to incorporate to keep Mr. Spears from having to pay so much taxes. The corporate records show that for the year 1966 a bonus was accrued for Mr. Spears and Mr. Rich, each in the amount of $6125. For the year 1967, car expenses and bonuses in equal amounts were again posted for the two men. For the year 1968 an expense allowance of over $17,000 was allowed each of the two men. All of those allowances and bonuses were paid excepting $13,355 balance owed Mr. Rich (for which the chancellor allowed him judgment). Disagreement arose in early 1969 and culminated in the Riches quitting work in July of that year.

On cross examination the witness conceded that the company first operated with Mr. Spears being shown as sole proprietor. It was shown that when an employer identification number was obtained, Spears was shown to be the sole owner, that for 1965 the Riches were listed as employees; that the W-2 forms for that year showed Spears to be sole owner; that the financial statement of August 1965 showed likewise; and that "as far as the records are concerned Spears Construction Company was operated as a sole proprietorship" during 1965 and preceding the incorporation in August 1965. The minutes of the corporation, signed by Mrs. Rich, showed a meeting on Sept. 10, 1965, at which time that record showed Mr. Spears was to receive an additional 154 shares of stock. Mrs. Rich said she signed the minutes without reading them, they having been prepared by an attorney, Mr. Frank Wynne.

John W. Smith testified for the Riches, appellees. He was an insurance salesman. He said he was acquainted with all the parties and met with them at the Rich home in January 1965 to discuss their insurance needs. The parties said they wanted to first start a partnership to see if it would be a success before incorporating. "I understood it was a 50-50 partnership." He said he suggested the sole proprietorship in order to provide workmen's compensation coverage for Mr. Rich because he would be doing the construction.

Witness John W. Rich outlined the formation of the partnership in much the same manner as his wife. On cross-examination he conceded that he signed the minutes of September 15, 1965 (wherein an additional 154 shares of stock was authorized for Mr. Spears) but he insisted that he did not attend the meeting, nor did he read the minutes before signing them.

Witness Mavis Prewitt is the mother of Audrey Rich, lived in the Rich home and was present at the time of the first meeting between the parties. She testified that "they discussed being partners, just the three of them".

Attorney Frank Wynne of Fordyce was the first witness for appellant Spears. He handled the incorporation

and met the parties one or more times prior to the date of incorporation, August 27, 1965. "I prepared the minutes of the director's meeting of September 10, 1965. James R. Spears, Audrey E. Rich, John W. Rich, and myself were present at the meeting, and the minutes were signed by Audrey E. Rich. The authorization for the issuance of stock was in particular accordance with their wishes." Here is the authorization as it appears in the minutes:

> Bill Mowrey, of the C.P.A. firm of Russell Brown of Little Rock, Ark., reported to the directors that the total capital invested in the Spears Construction Company of Fordyce, Ark. amounted to $15,700.00. It was brought to the directors' attention that James R. Spears, has produced 98% of this capital and at a par value share of stock amounting to $100.00 dollars, that James R. Spears should hold 155 shares; Audrey E. Rich one share, and John W. Rich one share, making a total outstanding shares of 157 shares. The Articles of Incorporation list James R. Spears as holder of one share.

> John Rich, moved that the corporation issue to James R. Spears 154 shares of stock in the Spears Construction Company, Inc. This motion was seconded by Audrey Rich and upon vote, the motion carried.

Attorney Wynne testified further that he was "sure Audrey Rich knew what was in these minutes, and I do recall reading them to them at their house, when Bill Mowrey was present . . . . . . I did incorporate a sole proprietorship."

William E. Mowrey, certified public accountant with Russell Brown Company in Little Rock, testified for Spears. He prepared Spears' tax returns during 1965-70. "The corporate returns showed ownership of the corporation 100% in James R. Spears", the qualifying shares being fictitious. Mrs. Rich, as bookkeeper and secretary of the corporation furnished Mowrey with the information for compilation. Just prior to the incorporation the net worth of the corporation was figured and it was determined that the net worth of the company was to be surrendered to the corporation for stock. On the basis

of those figures Mowrey suggested an additional issue of 154 shares to Mr. Spears. On cross-examination he conceded that a tax return could reflect 100% ownership in one person when in fact it was not "but I would say it did not happen here since I put the true information as I knew it."

Appellant Spears testified at some length. Mr. Russell of Russell Dry Kiln died in 1964 and Spears decided to go in business for himself. He discussed his decision with his friends, Mr. and Mrs. Rich, and they were interested in joining him. He hired Mr. Rich on an hourly basis for welding and construction; he employed Mrs. Rich as bookkeeper at $75.00 per week; and Mr. Spears was to do selling and supervise construction. Mr. Spears was rated in Dunn & Bradstreet as having a net worth of approximately $45,000. Mr. Rich's financial situation was bad, he being delinquent on welding equipment payments, and Spears asked Rich's creditor for an extension. He verified the issuance of the stock certificates of September 10. He explained the bonuses. At the end of 1965 he gave the Riches $500 each and took $2500 for himself. The payment to Mrs. Rich was for office rent. He told them that if the company kept prospering he would give them an annual bonus of ten per cent total. Car expense was set up on the books for 1966 and 1967 in the amount of $5000 but was not to be withdrawn except to pay taxes. Of the bonus for 1968, $10,000, was set up for tax purposes and was not to be drawn except to pay taxes. The legitimate bonuses for 1968 amount to $17,200 and were accrued and paid. The working arrangement became unsatisfactory in some respects in 1967. Spears gave them the 1968 bonus but insisted that Rich's services would have to improve before they could expect to receive any more bonuses. Serious dissension developed in early 1969 and the Riches left the business in July of that year. Prior to their departure Spears said he told the Riches there would be no bonus for them for the year 1969. He insisted that there was never any discussion about a partnership.

C. L. Talbot, president of the Bank of Fordyce, testified for appellant Spears. When Spears started the business he came to the bank to discuss possible financing.

He dealt only with Spears and nothing was said about Spears having any partners. The entire conversation led the banker to believe that Spears was operating individually.

Witness Barbara Spears succeeded Mrs. Rich as bookkeeper. She explained the sources of the $15,700 that was placed in the capital stock account of the new corporation; it came from Mr. Spears' initial investment account, less his drawing account, plus the profit of the unincorporated company.

Our abstract of the evidence is of course not complete in every detail. We have familiarized ourselves with the appellants' abstract and the supplemental abstracts, including the numerous exhibits filed in a separate volume.

After carefully weighing the evidence we have concluded that a preponderance thereof rests on the side of appellant Spears. We refer to the critical question as to the status of the association between the parties. First, the written evidence is all in favor of Spears' contention. The minutes of the first meeting of the stockholders recited that Spears had invested as capital the sum of $15,700 and was entitled to 155 shares, and that Audrey Rich and John Rich held one share each. Those minutes were signed by Audrey Rich as secretary. At the next meeting of the corporation the minutes of the previous meeting were approved over the signatures of all three parties. All corporate tax returns were filed in the name of Spears as the sole proprietor. When the business was begun, Spears took all the financial risk; he had a good credit rating, while the Riches were less fortunate. Spears declined profitable employment to set up the business. Rich was delinquent on the payment for the welding equipment and the corporation finally took up the payments. If a partnership were organized as claimed by the Riches, then the latter should have shared equally with Mr. Spears in the first distribution of bonuses. The record shows that for the first year Mr. Spears received a bonus of $2500, while the Riches received $500. It is true that the bonuses for the "corporate years" amount to a total for the Riches of ten per cent of the profits. When considered percentagewise it cannot be

said, *ipso facto,* that the size of the bonuses showed a partnership. After all, they were the three key people in the venture and it is not shown to be unusual for a prosperous concern to give a ten per cent bonus to key personnel. It is not insignificant that the title of the company bore the name of Mr. Spears. The only two disinterested witnesses testified for Spears. We refer to the testimony of Attorney Frank Wynne and the C.P.A., Bill Mowrey. We have abstracted their testimony and suffice it is here to say that it strongly favored the position of Mr. Spears. Finally, we point out that the burden of proof was on appellees, the Riches.

On the question of the ownership of the stock of Spears Manufacturing Co., Inc., the finding of the chancellor is reversed. That part of the decree which awarded appellees, the Riches, judgment for $13,355 is affirmed. That figure represents the unpaid bonus which Mr. Mowrey testified was charged properly on the books of the corporation and constituted a just debt. Mr. Mowrey's testimony was not contradicted and the allowance is not seriously questioned on appeal. Because of our finding as to sole ownership in Mr. Spears, the points raised by appellees in case numbered 5-6064 become moot.

The cause is reversed and remanded with directions to the chancellor to enter a decree not inconsistent with this opinion.

Affirmed in part, reversed in part.

JONES, J., dissents.