**STATE of Missouri, Respondent,**

v.

**Lester Paul JENKINS, Appellant.**

**No. 56589.**

Supreme Court of Missouri,
Division No. 1.

April 9, 1973.

Motion for Rehearing or to Transfer to Court
En Banc Denied May 14, 1973.

John C. Danforth, Atty. Gen., Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, for respondent.

Joseph Langworthy, Jr., Lester Paul Jenkins, Pacific, for appellant.

HIGGINS, Commissioner.

Lester Paul Jenkins, charged with murder, first degree, was convicted by a jury which assessed his punishment at life imprisonment. Sentence and judgment were rendered accordingly. §§ 559.010, 559.030, RSMo 1969, V.A.M.S.

Appellant tacitly concedes the sufficiency of evidence to sustain his conviction. Suffice to say the record contains evidence upon which the jury reasonably could find: that prior to January 10, 1970, defendant, Carl Aaron Walker, Charlie Joe Quinn, Harold Criswell and Richard Dancy plotted robbery of the Compton Street Market in St. Louis, Missouri; that Walker knew the store and its supply of money on hand, having cashed checks there on several occasions; that Walker would enter the store as if to cash a check and the others would then enter, rob the store, and take Walker's belongings also; that the robbers went to the store in defendant's father's automobile; that the owner of the store, Melvin Schneider, saw defendant, Walker, Quinn, and another Negro enter his store January 10, 1970; that Quinn took his gun and wallet; that defendant fired a shot at the boy behind the liquor counter; that defendant took money from the liquor drawer; that other money was taken from the cash drawer; that more than $500 was taken in all; that in the course of the robbery, Quinn shot one of the butchers, Joseph Jones, in the abdomen and that Mr. Jones died January 11, 1970, from hypovolemic shock due to penetrating gunshot wound of the abdomen. Such made a submissible case of murder, first degree, committed in perpetration of robbery. § 559.-010, supra.

Appellant contends, Point I, that his motion for judgment of acquittal at the close of the evidence should have been sustained "upon the grounds that the substitute information in lieu of indictment purports to

charge, if it charges anything, only murder in the first degree under the first part of Section 559.010, V.A.M.S., and does not charge a homicide in the perpetration of a robbery under that section, as the evidence tends to support, sufficiently to meet the [constitutional] rights of the accused * * * to be informed of, the nature and cause of the accusation, and also to give the defendant * * * [constitutional] notice of the charge against him * * * and in that the purported proof of a felony homicide is a departure from the charge of murder as stated in the said information."

The information in question charged: "That LESTER PAUL JENKINS alias OSCAR JENKINS, alias ROBERT Mc-CAIN ACTING WITH OTHERS in the City of St. Louis, State of Missouri, on the 10th day of January 1970 feloniously, willfully, premeditatedly, deliberately, on purpose, and of his malice aforethought did make an assault upon JOSEPH JONES with a loaded pistol, and then and there, feloniously, willfully, premeditatedly, deliberately, on purpose, and of his malice aforethought did discharge said pistol at and upon the body of the said JOSEPH JONES thereby feloniously inflicting a mortal wound upon the said JOSEPH JONES, from which said mortal wound JOSEPH JONES did die on January 11, 1970; contrary" etc.

Such information is sufficient in form and substance to charge murder, first degree, in what has been stated as common or conventional form under Section 559.-010, supra. State v. Floyd, 403 S.W.2d 613, 615 [7] (Mo.1966); 15 Mo.Dig., Homicide § 139.

■ It is well settled that a prosecution for murder, first degree, in perpetration of any of the felonies enumerated in Section 559.010, of which robbery is one, may be proved and submitted under a charge in the usual and common form, as in this case of a willful, deliberate, and premeditated killing. State v. Stancliff, 467 S.W.2d 26, 33 [4, 5] (Mo.1971); State v. Sykes, 436

S.W.2d 32 (Mo.1969); State v. Granberry, 484 S.W.2d 295, 300 [11, 12] (Mo. banc 1972); State v. Owens, 486 S.W.2d 462, 467 (Mo.1972). This is so because under Section 559.010 a homicide committed in perpetration of the there enumerated felonies is murder, first degree; and the felonious intent occurs by virtue of the felony without the necessity of showing a separate intent to kill. State v. Owens, supra, 486 S.W.2d l. c. 466 [3, 4].

Appellant asserts his constitutional issue has never been decided in Missouri; however, in State v. Stancliff, supra, 467 S. W.2d l. c. 33, appellant urged the court to re-evaluate the foregoing rule citing the Sixth Amendment, United States Constitution, and Article 1, Section 18(a), Constitution of Missouri, which provide that an accused shall have the right to be informed of the nature and cause of the accusation. The court adhered to the rule. See also State v. Granberry, supra.

■ This information puts the accused on notice that he is charged with causing the death of Joseph Jones. Such notified him that he would have to defend against killing Joseph Jones, and he could never be retried for killing Joseph Jones had the jury acquitted him. If defendant believed himself in need of the details and particulars of the offense, he could have secured same by motion under Rule 24.03, V.A.M. R., a recourse he waived by failure so to move. State v. Ball, 432 S.W.2d 265, 266 [1] (Mo.1968).

Appellant's next point, III, contains five charges of error upon voir dire examination of prospective jurors:

"1. permitting the prosecuting attorney's statement to the effect that reasonable doubt was to be defined by the judge to stand, in that, properly, it was not to be defined by the judge, and was of course subsequently not to be defined by him;

"2. permitting the prosecuting attorney's statement to the effect that there was a predetermined punishment for the alleged

18

crime to stand, in that there were alternative, but not predetermined, punishments prescribed;

"3. refusing to permit defendant's attorney to inquire sufficiently of the panel about its understanding of the difference in the duties of a civil and of a criminal jury, and particularly of its understanding of the differences in the burden of proof in a civil and in a criminal trial;

"4. permitting the prosecuting attorney's statement to the effect that the jury should have an open mind, which in effect contradicted the presumption of innocence which the defendant was entitled to;

"5. permitting the prosecuting attorney to inquire whether any members of the jury panel or of their family had been arrested."

■ An instruction defining "reasonable doubt" is not required, State v. Taylor, 486 S.W.2d 239, 244 [10] (Mo.1972), State v. Robinson, 117 Mo. 649, 23 S.W. 1066 (1893), State v. Lafferty, 416 S.W.2d 157 (Mo.1967); neither is it error to define reasonable doubt, and the court did, by Instruction 6, define reasonable doubt in a previously approved form. State v. Wiley, 442 S.W.2d 1, 2 [2] (Mo.1969); State v. Durham, 418 S.W.2d 23, 31 [24] (Mo. 1967). Consequently, permitting the prosecuting attorney's remark to stand was not error.

Appellant does not demonstrate where the prosecuting attorney may have made the remark that "there was a predetermined punishment." Both prosecuting attorney and defense counsel made repeated references upon voir dire to the then applicable penalty and range of punishment for murder, death or life imprisonment. It is not suggested that any such references constituted trial error and, in view of the statute, it may be said that death or life was the then "predetermined" punishment for murder, first degree.

The substance of appellant's third criticism of the voir dire is that a direction to counsel limiting them to general questions where such "would suffice" and would not prejudice either the State or defendant abridged his right to determine jurors' qualifications. Specifically, it appears that counsel wanted to go further in determining panel members' understanding of the difference in duties of a civil and criminal jury.

■ Appellant does not develop what additional inquiry he may have wished to make; neither does he demonstrate how any limitation imposed may have prejudiced defendant. The transcript references show only questions by which counsel would tell prospective jurors what views they should hold with respect to defendant's innocence, and that such questions were argumentative in nature. In such circumstances no abuse of discretion by the court in its control of voir dire is shown.

■ With respect to the fourth complaint, appellant says only that presumption of innocence and an open mind are different. He does not demonstrate what questions suggested the alleged conflict and he does not demonstrate how he was prejudiced. The context of the referenced questions shows only that the state was attempting to ascertain whether any juror had decided defendant's guilt or innocence because of preexisting prejudice by way of background, news reports, and the like. Again, such does not demonstrate an abuse of discretion in control of voir dire.

■ Of his fifth complaint, appellant asserts only that questions to jurors about their arrests are never permitted unless some peculiar fact is present. Appellant's only citation does not support his statement, and the assertion alone does not demonstrate how defendant was prejudiced or how the court abused its discretion. Such questions by a prosecuting attorney are at his risk of disfavor, and reasonably may bear on a juror's present state of mind. In the circumstances of this case,

they do not convict the court of an abuse of discretion.

Next, by Point V, appellant asserts the court erred in giving Instruction No. 2 in that (1) it and No. 3 are verdict-directing instructions and thus the court erroneously gave two verdict-directing instructions; (2) "there was no evidence whatsoever to show that the defendant personally shot or killed Joseph Jones" and thus is not supported in the evidence. He argues the State should have been required to elect between Instructions 2 and 3; and that even if it was proper to give both instructions, No. 2 was further erroneous because it "postulates a fact" not supported by evidence, i. e., that defendant shot Jones to death.

By Instruction No. 1, the court advised the jury that "Murder in the First Degree is the killing of a human being feloniously, wilfully, deliberately, premeditatedly and with malice aforethought, or the killing of a human being while perpetrating a robbery," and also defined those terms; by Instruction No. 2, the court advised that if the jury found beyond a reasonable doubt that Lester Paul Jenkins, "acting with another person or other persons," feloniously, etc., did shoot Joseph Jones to death, then the jury would find defendant guilty of murder, first degree; by Instruction No. 3, the court advised that homicide committed in perpetration of a robbery is murder, first degree, and that if the jury found beyond a reasonable doubt that Lester Paul Jenkins, acting with another person or persons, feloniously, etc., and by means of a dangerous and deadly weapon did rob Melvin Schneider, and that in the perpetration of said robbery one of said persons did shoot Joseph Jones to death, then "the perpetration of such robbery, if any, stands in lieu of deliberation and premeditation as heretofore defined, and you will be warranted in finding the defendant guilty of Murder in the First Degree * * *."

Irrespective of appellant's characterization of Instructions 2 and 3 as verdict-directing instructions, it is clear that No. 2 is the only verdict-directing instruction submitting the murder, first degree, of Joseph Jones, and that No. 3 simply covers the so-called felony-murder means of committing murder, first degree. As such, No. 3 dealt only with the substitution of the finding that the homicide of Joseph Jones was committed in the perpetration of a robbery for the elements of deliberation and premeditation as set out in the verdict-directing instruction, No. 2, which required a finding that defendant killed Joseph Jones. State v. Smith, 491 S.W.2d 257 (Mo.1973). Similar prior submissions have been made and held not to conflict as to require any election. See State v. Phillips, 299 S.W. 2d 431, 437 [13–15] (Mo.1957); State v. Schnelt, 341 Mo. 241, 108 S.W.2d 377, 382 [7–9] (1937).

■ Examination of Instruction No. 2 shows that it did not postulate that defendant actually shot Joseph Jones as asserted by appellant but, rather, that he acted with another person or persons; and by Instruction No. 4 the court advised that all persons are equally guilty who act together with a common intent in commission of a crime, and that a crime committed by two or more persons acting jointly is the act of all and of each one so acting. Consequently, not only was appellant's assertion inaccurate—the instructions when read as a whole, State v. Washington, 364 S.W.2d 572 (Mo.1963), constituted an accurate submission of defendant's participation.  ·

By his Point VI appellant makes three attacks on Instruction 3.

He asserts (1) the court erred in giving No. 3 because it and No. 2 are both verdict-directing instructions. Appellant offers no new argument on this complaint. He recognizes this was covered by his Points I and V and "is a continuation of them * * *." Consequently, it need not be further considered.

He asserts (2) that No. 3 on felony murder is a departure from the charge of mur-

der, first degree, in common form in the information. This contention was denied under Point I and need not be further considered.

He asserts (3) that No. 3 was erroneously given because there was no evidence to show defendant personally shot or killed Joseph Jones. This contention was denied under Point V(2) and need not be further considered.

■ By his Point VII appellant asserts the court erred in giving Instruction No. 7 advising that the jurors are the sole judges of the credibility of witnesses and of the weight to be given to their testimony, and that with respect to any witness who has knowingly sworn falsely to any material fact, the jury "should reject such false testimony and may reject any or all of such witness's testimony." He argues that the instruction contradicts repeated direction from the court during trial for the jury to consider all evidence, and that it is not a correct statement of the law.

Appellant recognizes "that this instruction has been previously approved by the Supreme Court of Missouri," but requests that the matter be re-examined. Appellant presents no authorities to consider in his requested re-examination and the recognized authorities do approve the instruction as given and against virtually the same attack. See e. g., State v. Rozell, 279 S.W. 705, 710 (Mo. banc 1926); State v. Swisher, 260 S.W.2d 6 (Mo. banc 1953); State v. Rack, 318 S.W.2d 211 (Mo.1958).

By Point VIII, appellant charges the court erred in refusing his requested Instruction A, "thereby omitting the instruction that the charge created no inference that any offense was committed or that the defendant is guilty. The giving of instruction number 6, which makes no reference to the inference as to the corpus delicti, does not correct the omission as to it." By Point IX he charges error in giving Instruction No. 6 and in refusing his requested Instruction B on presumption of innocence asserting No. 6 "apparently deprives the defendant of the presumption of innocence at some vaguely-defined point in the trial, apparently when a prima facie case is made satisfactorily to the jury."

Instruction No. 6 advised the jury that the substitute information contained the formal charge "but is not to be taken as any evidence of defendant's guilt," and also advised on the presumption of innocence and burden of proof. Appellant concedes "that the Court has approved this instruction, but * * * urges * * * that instruction A is more accurate * * * and should have been given instead." He "deems the middle paragraph of the instruction [on presumption of innocence] objectionable"; and that his Instruction B is preferable in treatment of the presumption of innocence.

■ As conceded by appellant in Point VIII, Instruction 6, advising that the charge is not evidence of guilt, is in the form approved for such a cautionary instruction on prior occasions, State v. Chick, 282 Mo. 51, 221 S.W. 10, 15 [8] (1920); 9A Mo.Dig. § 768(1); and, as conceded in Point IX, that portion of Instruction 6 on the presumption of innocence is also in the form approved on prior occasions, e. g., State v. Wiley, supra, 442 S.W.2d l. c. 2 [2]. In addition, the precise contention of Point IX has been ruled and rejected, State v. Wiley, supra; State v. Donnell, 430 S.W.2d 297, 303 [15] (Mo. 1968); and the complaint, Point VIII, that Instruction 6 does not negate the inference as to the corpus delicti is without merit when the charge, read as a whole and particularly Instruction 2, requires the jury to find the corpus delicti, i. e., that Joseph Jones was shot to death.

By Point XI appellant charges the court erred in overruling his motion to suppress and in admitting evidence concerning a lineup because he did not have counsel at the lineup, was not advised of his right to counsel, and had no way of getting counsel.

Defendant's motion to suppress was directed at a lineup on January 26, 1970. The record shows that Robert C. Babione of the Public Defender's Office was, at the request of the police, present at the lineup; that the Public Defender's Office had represented him in the past, and that defendant was indicted in this case February 19, 1970.

■ ■ His contention fails for two reasons: In the first place, the presence of Mr. Babione at the lineup was sufficient to satisfy the requirement of counsel even though Mr. Babione had not been chosen specifically by defendant. State v. Sigh, 470 S.W.2d 503 (Mo. banc 1971). In the second place, this was a preindictment lineup and the counsel requirement does not apply. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Chavez, 483 S.W.2d 68 (Mo.1972). In addition, the record shows an absence of prejudice to defendant in that trial counsel had opportunity to and did consult with Mr. Babione about conduct of the lineup, and Mr. Babione testified to the circumstances and his impressions of the lineup.

Defendant called Harold Criswell as a witness. He stated his participation in the robbery and denied that defendant took part. Upon cross-examination, the following transpired:

"Q (By Mr. MacDonald) Well, here, let me ask you this, Mr. Criswell. Where are you living right now? A What you mean right now? Q Where are you staying? A At the penitentiary right now. Q And, how long will you be staying in the penitentiary? A For life. Q And before you got life— MR. LANGWORTHY: Move for a mistrial, Your Honor. THE COURT: Motion will be denied. MR. LANGWORTHY: May I state the grounds of it? * * * MR. MacDONALD: No showing on the record of anything else other than he got life. MR. LANGWORTHY: Shows conviction of the co-defendant; is reversible error. THE COURT: No showing this man's a co-defendant. MR. MacDONALD: No showing why he got life. MR. LANGWORTHY: It's the same idea. Just because it didn't show what offense it was. (Proceedings were then resumed within the hearing of the jury as follows:) Q (By Mr. MacDonald) Mr. Criswell, were you convicted in 1958 of the felony of stealing and sentenced to five years in the Missouri State Penitentiary? A Yeah. Q And, were you in the year 1951 convicted for the felony offense of burglary and sentenced to three years in the penitentiary? A That's right."

■ Appellant contends now, Point XV, the court erred "in refusing to strike and to instruct the jury to disregard the testimony of Harold Criswell that he received a life sentence." It is apparent from the quoted record that this request was not presented to the trial court and that it is not the same as the motion for mistrial. Accordingly, the contention has not been preserved for review. Rule 27.-20(a); Robertson v. State, 464 S.W.2d 15, 20 [9] (Mo.1971).

Appellant's Points XVIII, XIX, and XXI relate to incidents in the closing arguments. First he asserts the court erred in permitting the State to argue "to the effect that Melvin Schneider's character was good, in that there was no evidence on which to base the argument."

■ It will be remembered that Mr. Schneider was the owner of the Compton Market and victim of the robbery in question. The record also showed he had owned the market five years and was currently employed as grocer in Mansion House. This constituted evidence of Mr. Schneider's character; and the context of the argument, as referenced by appellant, shows the prosecuting attorney was commenting on the credibility of the State's principal witness. Accordingly, the inference was not improper. State v. Baldwin, 358 S.W.2d 18 (Mo.1962); State v. Miles, 199 Mo. 530, 98 S.W. 25 (1906); State v. Woods, 346 Mo. 538, 142 S.W.2d 87 (Mo.

1940); State v. Roseberry, 283 S.W.2d 652 (Mo.App.1955); State v. Harris, 351 S. W.2d 713 (Mo.1961).

Second, he asserts the court erred in permitting the State to argue to the effect defendant's argument was "Mickey Mouse" and "ridiculous" without reprimanding him as defendant requested.

■ The referenced context of the "Mickey Mouse" argument shows that defendant objected to it as improper and asked the court to reprimand counsel and to instruct the jury to disregard. The court directed the prosecuting attorney not to characterize the argument of counsel, instructed the jury to disregard, and indicated he would not reprimand counsel. Appellant concedes that he did not preserve the allegation of error of refusal of reprimand; and otherwise defendant got all his requested relief. Appellant urges further consideration of the unpreserved error under Rule 27.20(c); however, the refusal of the drastic action of reprimand in view of the action taken does not constitute manifest injustice under that rule. The referenced context of the "ridiculous" argument shows that defendant objected to the characterization and the court overruled it. The State made no further argument of such nature, and no further request for relief appears. Consequently, the charge of error in refusal of reprimand was not preserved by request for such relief, Rule 27.20(a); and it does not appear to have resulted in any manifest injustice under Rule 27.20(c).

■ Third, he asserts the court erred in refusing to permit defense counsel to comment upon failure of the State to introduce evidence "to the effect that Melvin Schneider had identified defendant at the lineup * * * and in further instructing the jury to disregard defendant's counsel's comments on the subject; and erred in further commenting to the jury that such

evidence would have been inadmissable," the last said to be in violation of Rule 26.-09 and Section 546.380, RSMo 1969. The referenced context of this contention shows that defense counsel stated: "Now, I think it's very significant that at this lineup Officer Thomas Bowe did not state that Melvin Schneider identified the defendant." The State objected on the grounds the statement was hearsay, and it was impossible for the State to bring that out " * * * [and] would ask that the jury disregard that attempt to tell the jury that the State did not bring out that which it could not." The court sustained the objection on the ground "the evidence with respect to what Officer Bowe heard at the lineup would not be admissible. Being hearsay." The jury was not instructed to disregard. Defense counsel's comment went to a matter which, as argued by the prosecuting attorney, he could not have had admitted over proper objection, because it was, as stated by counsel, a matter of hearsay.[1] The hearsay objection was thus properly sustained and the court's statement of its ground was thus accurate and proper. State v. Degraffenreid, 477 S.W.2d 57 (Mo. banc 1972).

Finally, Point XXII, appellant asserts the court erred "when, after sustaining an objection to certain testimony by Mable Spraggins, it refused to instruct the jury to disregard * * *."

■ Of this point appellant says further, "The Court sustained defendant's objection * * * and sustained defendant's request that the objectionable matters be stricken. However, the court refused defendant's requests that the jury be instructed to disregard the witness' answer." Apparently, appellant feels there is a distinction between instructing the jury that an answer is stricken and instructing the jury to disregard the answer. If so, in this context it appears also to be a distinc-

---

1. Interestingly, defendant, by objection, prevented the State from introducing this evi-

dence during the direct examination by the State of Officer Bowe.

tion without a difference, and not a matter of trial error.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.