STATE of Missouri, Respondent,

v.

Dennis HAYMON, Appellant.

No. 61554.

Supreme Court of Missouri,
En Banc.

May 11, 1981.
Rehearing Denied June 8, 1981.

Robert A. Hampe, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Nancy Kelley Baker, Asst. Atty. Gen., Jefferson City, for respondent.

SEILER, Judge.

This is an appeal from a conviction of murder in the second degree under § 565.-004 RSMo 1978,[1] with a life sentence,[2] which puts jurisdiction in this court under Mo.Const. Art. V, § 3.

As defendant does not challenge the sufficiency of the evidence, we condense the facts relating to the crime: On June 19, 1978, Richard Ford was driving his automobile eastward on Delmar Boulevard in St. Louis, with his cousin, Jerome Brown, seated to his right. Ford had stopped his car at an intersection traffic light when another car drove up on the right side and stopped next to him. There were two men in the other car. The driver called out to Brown and then fired two shots from a pistol at him. Brown leaned out across the space between the two cars and tried to grab the pistol. The man with the pistol leaned back and fired two or three more shots. Brown slumped over the car door. He died from the gunshot wounds.

The defense was alibi.

Now to a recital of the facts on an evidentiary matter: On January 7, 1979, the day before the original date set for defendant's trial for the murder of Jerome Brown, Richard Ford was again driving his automobile in St. Louis. He noticed a car following closely, so he pulled over toward the curb and stopped. The car drew along side Ford, at which time Ford heard a loud noise and saw that his window had been shattered. He heard another loud noise and was knocked to the side of the car. The other car, carrying four black men, according to Ford, stopped. The passenger in the right front seat opened his door and got out. He had on a ski mask, but Ford identified this man as defendant, explaining the mask covered only the area of the head surrounding his face. Ford could see the man's face except for his ears, chin and hairline.

Defendant carried a long-barrelled gun which, as he approached Ford's car, he pointed at the car but Ford did not see him fire any shots. Ford had been shot in the wrist and was unable to open the door on the passenger's side, which often jammed. He moved to the driver's side in an attempt to get out of the car but defendant was standing outside the car on that side pointing his gun at Ford.

Ford testified that shortly after defendant had gotten out of the other car, another man got out of the left rear passenger seat of that car, approached Ford's car with a pistol and fired three to five shots towards the car. Ford was hit four times before he pushed the door open and ran across the street to a porch where he had seen a man standing. The man went inside the house, closing the door on Ford. Ford asked him to call the police and Ford's girlfriend. When the police arrived, they found Ford lying on the porch bleeding. They summoned an ambulance which took him to the hospital. Two weeks later Ford moved to California.

■ Defendant contends that the trial court erred in admitting evidence of the January 7 shooting of Ford because the state did not prove that defendant had committed the assault and permitting the jury to hear the testimony was extremely prejudicial to defendant.

The state asserts that *State v. Brooks*, 551 S.W.2d 634, 647 (Mo.App.1977), and cases cited therein, controls, in its holding that "acts, conduct and declarations of a defendant occurring after the commission of an offense . . . which are relevant to show a consciousness of guilt or a desire or disposition to conceal the offense are admissible." Defendant admits in his brief that "if committed by the appellant, the assault upon Richard Ford would be logically relevant to the appellant's guilt of the crime charged." He contends, however, that "the State was unable to prove by substantive evidence that the appellant herein committed the assault upon Richard Ford."

1. Unless otherwise indicated, all statutory citations are to RSMo 1978.

2. The sentence was imposed by the court, as defendant was found subject to the Second Offender Act, § 556.280, RSMo 1969.

To support his contention, defendant points to large discrepancies in the testimony of the two state witnesses with regard to the January 7, 1979 shooting. The account given by Ford, who testified first, is contained in the above recitation of facts. The other state witness, David Cullen, who was nearby at the time, shoveling snow in front of his mother's house, gave a much different account of the shooting. Cullen saw only one man shooting, not two. The gunman carried a pistol; there was no rifle. The ski mask covered his entire face, except for mouth and eyes. Cullen was unable to identify the assailant. Because Cullen went inside his mother's home, first to call the police and later to get out of harm's way, he did not see the entire incident. He did not see Ford get out of his car and come up to Cullen's mother's residence and pound on the door.

■ The damaging testimony was that of Ford. While defendant objected to it on the ground that the identification of the assailant was not clear and convincing and it involved another crime, if defendant were trying to silence Ford by shooting him, this would be relevant and hence admissible as showing a consciousness of guilt or a desire to conceal the crime by removing the eye witness who could identify the defendant (and this is the ground on which the trial court admitted the evidence, citing *Brooks* as authority). The question of admissibility of evidence is for the court. 9 J. Wigmore, Evidence, § 2550, p. 501 (3rd ed. 1940). Once in evidence, then it is for the jury to give it what weight they see fit. Ford identified defendant as the man trying to shoot him. The testimony was admissible.

The fact that for some reason the state chose to put on a second witness, Cullen, much of whose testimony contradicted Ford, does not mean the trial court was in error in admitting Ford's testimony in the first place or that Cullen's testimony wiped out Ford's.

■ Defendant next claims error in certain procedural matters not heretofore set out: On July 20, 1978, defendant was charged, by indictment, with capital murder as defined in § 565.001.[3] On May 21, 1979, the state filed what it refers to as a memorandum, which read as follows:

"Comes now the State of Missouri and elects to proceed with the offense of murder first degree which is a lesser included offense of capital murder."

The first degree murder statute in force at the time of Brown's murder, § 565.003,[4] is restricted to what is commonly called "felony" murder. The former first degree murder statute, § 559.010, RSMo 1969 (repealed in 1975),[5] included both "felony" murder and "conventional" murder.

It is hard to tell what the state had in mind here. After May 26, 1977, the only first degree murder in existence in Missouri was that set forth in § 565.003 and, of course, under the facts of the case, § 565.003 could have had no application. Section 559.010, RSMo 1969, defined first degree murder in terms of deliberate and premeditated killing and in terms of homicides committed in the perpetration of five specific felonies, but this statute had been repealed for almost four years at the time of the so-called memorandum.

---

3. Section 565.001 reads as follows:
   "Any person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder."
   It became effective May 26, 1977.

4. Section 565.003 reads as follows:
   "Any person who unlawfully kills another human being without a premeditated intent to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping."
   It became effective May 26, 1977.

5. Section 559.010 (repealed effective September 28, 1975) read as follows:
   "Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree."

Whatever the state was trying to do with the memorandum, it was a nullity so far as charging defendant with an offense. It was neither an indictment, an information, nor a substitute or amended information. It in no way complies with the requirements of § 545.030 and 545.040, as to what indictments shall contain or with Rule 24.01 (the rule then in force) as to what indictments and informations shall contain or with § 545.300, or former Rule 24.02 pertaining to amendments or substitutions. It contains no facts relating to any of the five felonies named in the statute. Prosecutors should refrain from such meaningless actions. Attempts to charge under statutes which have been repealed for years do not help anyone, and unawareness of the repeal of § 559.010, RSMo 1969 if so, is unbecoming a prosecutor.

■ At the close of the evidence the court instructed on what used to be conventional first degree murder under § 559.010, RSMo 1969 which, as said, had been repealed some two years prior to the killing of the victim, using MAI–CR 6.02, which speaks in terms of finding the defendant "guilty of murder in the first degree." The court also instructed on second degree murder, using MAI–CR 6.02 and manslaughter, using MAI–CR 6.08.

Defendant argues that it was error to instruct on second degree murder, as it is not a lesser included offense of first degree murder, which he asserts was the only charge against him after the state filed the memorandum mentioned above. What defendant overlooks is that the memorandum, as discussed earlier, was a nullity with respect to accomplishing any change in the charge. Defendant remained charged with capital murder and it is well established that a second degree murder instruction may be given under a charge of capital murder. It is a lesser included offense. *State v. Strickland,* 609 S.W.2d 392 (Mo. banc 1980); *State v. Amos,* 553 S.W.2d 700 (Mo. banc 1977). Defendant's complaint about instructing on second degree murder is not valid.

■ Last, defendant contends the trial court coerced the jury into reaching a verdict by telling the jury it could deliberate for one more hour before either reaching a verdict or retiring for the evening.

On the fourth day of trial the jury was in court at 9:00 a. m. It retired to deliberate at 12:07 p. m. At 1:10 p. m., the jury went to lunch and returned at about 2:00 p. m. at which time it resumed deliberations. At 2:35 p. m. the jury was brought into the courtroom for a discussion with the court regarding a note they had sent the court. The jury again resumed deliberations until 5:11 p. m. at which time the trial court, without objection from either party, gave the jury an additional instruction, MAI–CR 1.10, on the desirability of reaching a verdict, etc. The jury resumed deliberations at 5:15 p. m. At 9:07 p. m., the jury was brought back into the courtroom and the following took place:

"THE COURT: I know it's been a long day, and I know you have been working hard trying to reach a verdict today, and I don't want to push you too hard but, of course, we have had the trial a few days here ourselves.

So, at this time, I would like to know whether you would like to go back to the hotel for the night and come back tomorrow morning and begin deliberating again or whether you feel that if you had more time this evening to stay at the courthouse, you might be able to work this out.

If you want, I'll permit you to stay here for another hour or so, if you want to try to work this matter out.

(Simultaneous responses from jurors.)

THE COURT: You want to try to work it out? All right. Well, if the Sheriff will take charge of the jury then.

DEPUTY SHERIFF SHAW: Okay.

THE COURT: It's nine o'clock, and I just don't want to push you too hard with this because I know you've been here since this morning at nine o'clock."

The jury then resumed its deliberations and about thirty-five minutes later brought back a verdict of guilty.

Defendant cites *Burroughs v. U.S.*, 365 F.2d 431 (10th Cir. 1966) and *State v. Mason*, 588 S.W.2d 731 (Mo.App.1979). Without taking space to recite the facts of these cases, it does not appear that the trial court here was "unduly anxious to conclude the lawsuit" as in *Burroughs* or that the jury was under the impression that the trial court was virtually directing the jury to reach a verdict as in *Mason*.

The tone of the dialogue in the present case does not convey a sense of pressure being put on the jury. The general tone comes through in the trial court's last sentence before the jury resumed deliberations:

"It's nine o'clock, and I just don't want to push you too hard with this because I know you've been here since this morning at nine o'clock."

The judgment is affirmed.

All concur.