STATE of Missouri,
Plaintiff-Respondent,

v.

Robert Earl HILLS, Defendant-Appellant.

No. 44466.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 16, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 17, 1982.

Application to Transfer Denied
Feb. 23, 1983.

Douglas L. Levine, Public Defender, Franklin County, Union, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Jay D. Haden, Asst. Attys. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Judge.

Defendant was charged with capital murder, convicted of second degree murder, and sentenced to twenty-five years imprisonment. On appeal he contends the trial court erred in overruling his motion for judgment of acquittal and in admitting an exhibit into evidence. We affirm.

In reviewing a challenge to the sufficiency of the evidence, we accept as true the state's evidence and reasonable inferences therefrom and disregard all contrary evidence. *State v. McGowan,* 621 S.W.2d 557, 558 (Mo.App.1981). We do not substitute our judgment for that of the jury; we determine whether there was substantial evidence reasonably supporting the jury's conclusion. *Id.* With these rules in mind,

we set forth the facts in the light most favorable to the state.

Defense testimony showed that defendant and the victim, Edward Wallace, lived on different floors of the same apartment building. On the evening of September 26, 1980, Wallace joined defendant and defendant's girlfriend in their apartment. After they dined and drank some beer, defendant agreed to drive Wallace to a union hall. The men drank more beer there before patronizing a couple of bars. While they were at the last bar defendant's cousin, Anthony Morris, came in and asked defendant to drive him to Union Boulevard and Dr. Martin Luther King Drive. Defendant agreed and the three proceeded to a location on Cote Brilliante Avenue, which happened to be opposite the home of Pierce Bush.

The state's evidence showed that upon hearing a gunshot, Bush looked out of his front door and saw three men near a car in a fairly well lighted area. Bush observed defendant pushing Wallace and hitting him with sticks as Morris leaned against the car and held a short-barreled shotgun. Then defendant stood by the front of the car while Morris, who was at the back of the car and still holding the gun, pushed Wallace and struck him with his fist. After Morris knocked Wallace down twice, Wallace attempted to escape by crawling up an adjacent hill leading into Sherman Park. Bush then telephoned the police but continued to observe the three men. Defendant and Morris chased the victim up the hill via some nearby steps. Sighting the victim, defendant said, "There he goes." The two pursued and caught the victim. After defendant pushed the victim twice more, Morris shoved defendant aside. Defendant walked away and began to urinate. During that time Morris, who continued to hold the gun, pushed and struck the victim, shouted "You think I'm bullshittin'?" and then shot him and reloaded the gun. At that point, defendant walked back and knelt beside the victim. Morris came over and said loudly, "Get up, you ain't dead." Defendant started to walk down the hill toward his car as Morris kicked the victim's body a couple of times. When the headlights of a police car

illuminated the men, defendant and Morris began running. An officer stopped them at defendant's car and Morris threw the loaded shotgun across the street.

Defendant's clothing was bloodstained, as were a dollar bill and book of matches found at the scene of the crime. Subsequent analysis disclosed that all of those blood samples matched, but they could not be compared to samples from the victim because he had received a blood transfusion prior to his death.

After his arrest, defendant waived his rights and made a written statement, which we set out here verbatim: "I was drive my car. The man make me get out the car. So I got out. The make man me got robbed me on street. The guy had a gun." Defendant later gave another officer an oral unrecorded statement detailing the final events of the night as follows. Defendant left the bar with Wallace and Morris and stopped at Sherman Park to urinate. When defendant came back to the car, Wallace left the car for the same purpose. Shortly thereafter defendant heard gunshots; upon investigating, he discovered Wallace's bleeding body in the park. Defendant returned to the car and told Morris that Wallace had been shot. Defendant went back to Wallace with a blanket and found Morris standing over him with a shotgun. In response to the officer's questions, defendant then stated that Morris was not in the car when defendant got out to look for Wallace or when he returned for the blanket. Defendant concluded his statement by saying that Morris shot Wallace and defendant did not know the reason. At trial defendant's version of the facts was similar to Mr. Bush's testimony, except that defendant denied ever pushing, striking, or chasing Wallace.

At the close of the state's evidence, the court denied defendant's motion for judgment of acquittal. The court ruled, however, that it would submit the case not on capital murder but only on lesser included offenses. Defendant's renewed motion at the close of all the evidence was overruled.

Defendant contends that the trial court erred in failing to grant his motion for judgment of acquittal because the state did not establish either that defendant acted with or aided Anthony Morris in killing Edward Wallace, or that defendant possessed the culpable mental state required for conviction.

■ Second degree murder is the willful, premeditated killing of a human being with malice aforethought. *State v. Black,* 611 S.W.2d 236, 239 (Mo.App.1980). Although the prosecution must establish beyond a reasonable doubt that the defendant intended to kill or inflict serious bodily harm upon the victim, intent may be inferred from the circumstances of the case. *Id.* An inference of general criminal intent arises "when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result." *State v. Shuler,* 486 S.W.2d 505, 509 (Mo.1972) (quoting 22 C.J.S. Criminal Law § 35).

A person with the requisite culpable mental state is guilty of an offense committed by the conduct of another person for which he is criminally responsible. § 562.036 RSMo 1978. A person is criminally responsible for another's conduct when "[e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." § 562.041.1(2) RSMo 1978. Thus, conviction does not require that a defendant personally performed all the acts constituting the elements of the crime. *State v. Singleton,* 602 S.W.2d 3, 8 (Mo.App.1980). Conviction may be sustained if he associated himself with the venture in some manner and took some affirmative action. *State v. Ingram,* 568 S.W.2d 562, 563 (Mo.App.1978). Any evidence fairly showing affirmative participation by a defendant in aiding another to commit a crime is sufficient to support conviction. *State v. Harris,* 602 S.W.2d 840, 845 (Mo.App.1980). Indicia of aiding in-

clude presence at the scene of the crime, flight therefrom, and association with another involved before, during, and after the offense. *State v. Kennedy,* 596 S.W.2d 766, 769 (Mo.App.1980).

■ Substantial evidence supports (1) a conclusion that defendant aided Anthony Morris in killing Edward Wallace and (2) an inference that defendant intended Wallace to die. Reiteration of all the facts is unnecessary. The evidence showed that defendant drove to the park, Morris displayed a shotgun and fired it into the air, and defendant thereafter joined Morris in physically assaulting and chasing the victim. Although at the time Morris shot Wallace defendant had temporarily moved a short distance away from the scene, he clearly had not terminated his association with Morris or withdrawn from the crime. Defendant did not show his disapproval of or opposition to Morris' actions, or do "everything practicable to detach himself from the criminal enterprise and to prevent the consummation of the crime." *State v. Baker,* 607 S.W.2d 153, 157 (Mo. banc 1980). Defendant immediately rejoined Morris at the scene and fled with him when the police arrived. The jury could reasonably conclude from the evidence that defendant and Morris acted together with the common purpose of attacking Wallace. It could further conclude that death was a likely consequence of that attack, considering Morris' possession of a gun which he had already fired. Even if defendant had not originally contemplated Wallace's death, he would be responsible for the natural and probable consequences of his participation in the attack upon the victim. *See State v. Sneed,* 549 S.W.2d 105, 106 (Mo.App.1977); *State v. Shuler,* 486 S.W.2d at 509.

■ Defendant next contends that once the trial court found the state's evidence insufficient to submit the case to the jury on capital murder, the court could not properly submit the case on second degree murder and manslaughter. We disagree. Second degree murder is a lesser included offense of capital murder. *State v. Haymon,* 616 S.W.2d 805, 808 (Mo. banc), *cert.*

*denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981). The trial court was obligated to submit to the jury the highest degree of the charge justified by the evidence. MAI–CR 15.00, Supplemental Note on Use 3a. The point is without merit.

■ Defendant's final contention is that the trial court erred in admitting into evidence Exhibit 18, a bloodstained dollar bill and matchbook found at the scene of the crime. Defendant argues that the exhibit was, among other things, irrelevant, without probative value, and unduly inflammatory. The trial court in its broad discretion determines the admissibility of demonstrative evidence; we will disturb its rulings only upon a showing that the court abused its discretion. *State v. Weekley,* 621 S.W.2d 256, 260 (Mo.1981). We find no such abuse here.

Judgment affirmed.

SNYDER, P.J., and LACKLAND H. BLOOM, Special Judge, concur.