**STATE of Missouri, Respondent,**

v.

**Mark S. CLARK, Appellant.**

No. 63484.

Supreme Court of Missouri,
En Banc.

May 31, 1983.

Rehearing Denied June 30, 1983.

Gail N. Gaus, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John Jacobs, Asst. Atty. Gen., Jefferson City, Steven H. Goldman, Asst. Pros. Atty., Clayton, for respondent.

BILLINGS, Judge.

Defendant Mark S. Clark was convicted of second degree murder [§ 565.004, RSMo 1978] and sentenced to life imprisonment. He contends, *inter alia,* the evidence was insufficient to support his conviction and it was reversible error to instruct on second degree felony murder because he was charged with capital murder.[1]  We affirm.

In considering the issue of sufficiency of the evidence, we consider the facts in evidence and all favorable inferences to be drawn therefrom, in the light most favorable to the State, and reject all contrary evidence and inferences.  *State v. Franco,*

---

1.  Defendant was charged in alternative counts with capital murder and second degree murder, the latter charge reciting the murder occurred during the commission of a certain felony.  At the close of the evidence the State dismissed the second count.  The court instructed on capital murder, second degree murder, second degree felony murder, manslaughter and self-defense.

A divisional opinion concluded that second degree felony murder is a separate and distinct offense from second degree murder;  that the felony is an *element* of the offense;  and, that while a charge of capital murder puts one on notice of a second degree murder submission it does not do so when the felony murder rule is involved.

544 S.W.2d 533 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

On June 10, 1980, the victim, Robert Bruce Lindsey III, went to defendant's house for the purpose of selling defendant marijuana. Defendant purchased more than three pounds of marijuana and paid Lindsey approximately $1,400. Defendant then tossed the marijuana into a small storage room adjoining the kitchen. Defendant and Lindsey then began discussing a $200.00 debt owed by defendant to Lindsey from a previous drug sale. An argument erupted, and Lindsey brandished a small steak knife. Defendant convinced Lindsey to put the knife away and suggested they smoke a "joint". While defendant was rolling the "joint" he looked up and saw Lindsey pointing a pistol at him. Lindsey ordered defendant to "step into the back room. Nobody's going to know I was here." Defendant stepped inside the doorway of the storage room, where he kept a loaded rifle. He grabbed the gun, pivoted, and fired. Lindsey was struck in the temple by the shot, and was killed.

Defendant wrapped the body in a blanket and loaded it into the trunk of the car that Lindsey had driven to the house. As he was driving up the highway he saw Steven Halter parked where they had earlier arranged to meet for a drug sale. Defendant stopped, told Halter what had happened, and asked him for help. When Halter refused, defendant got back into the car and drove to Busch's Wildlife Reserve, where he dumped the body.

Defendant returned to his home and there told one O'Brien he had killed a man over money. Later, O'Brien went with defendant to the wildlife reserve where defendant burned the body of Lindsey.

Steven O'Keefe testified that in the summer of 1980 he and defendant hunted and fished at Busch's Wildlife Reserve and that on one of these trips defendant brought a skull to the car and told O'Keefe it was the skull of a man he had killed over dope.

From the foregoing, the jury could find, beyond a reasonable doubt, that defendant killed Lindsey while engaged in an unlawful act, a felony.[2]

At common law, a homicide was either murder or manslaughter, and there were no degrees of murder. Not only was it murder to kill another, though the intent was merely to severely hurt, but a homicide unintentionally committed in pursuit of a felony was murder, and was punishable with death. Wharton on Homicide, § 105, p. 147, 3rd ed. (1907).

The felony murder rule can be traced back to Lord Coke, where he stated that: "If the act be unlawful it is murder. As if 'A' meaning to steale a deere in the park of 'B', shooteth at the deere, and by the glance of the arrow killeth a boy that is hidden in a bush: this is murder, for that the act was unlawful, although 'A' had no intent to hurt the boy, nor knew not of him, but if 'B' the owner of the park had shot at his own deer, and without any ill intent had killed the boy by the glance of his arrow, this had been homicide by misadventure, and no felony.

2. In rendering its verdict of guilty, the jury stated "We, the jury, find the defendant Mark S. Clark, guilty of murder in the second degree, as submitted in Instruction number 7.

Instruction No. 7 reads as follows: If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 10, 1980, in the county of St. Louis, State of Missouri, the defendant caused the death of Robert Bruce Lindsey III, by shooting him; and

Second, that the defendant did so in committing or attempting to commit the crime of possession of a controlled substance, schedule I, over 35 grams of marijuana,

Third, that defendant is not entitled to a not guilty of this charge as submitted in Instruction No. 10 [self-defense]

then you will find the defendant guilty of murder in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense."

A person is guilty of possession of over 35 grams of marijuana if he possesses that amount of marijuana and is aware of the character of the substance and knew that he possessed it. MAI–CR 2d 15.16.

"So if one shoot at any wild fowle upon a tree, and the arrow killeth any reasonable creature afar off, without any evill intent in him, this is per infortunium [misadventure]: for it was not ·unlawful to shoot at the wilde fowle: but if he had shot at a cock or hen, or any tame fowle of another mans, and the arrow by mischance had killed a man, this had been murder, for the act was unlawfull." Coke, Third Institutes (1797), p. 56.

"The felony murder rule permits the felonious intent necessary to a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony. Proof of intent to commit the underlying felony raises a conclusive presumption that the defendant possessed the necessary felonious intent to support conviction for the resulting murder, i.e., intentional, wilful, and premeditated, with malice aforethought, if felony murder, second degree, is charged, or these plus deliberation if felony murder, first degree is charged. State v. Jenkins, 494 S.W.2d 14 (Mo.1973); State v. Jasper, 486 S.W.2d 268 (Mo. banc 1972). The rule does not make the underlying felony an element of the felony murder; it merely provides an additional means of proving the requisite felonious intent for murder. State v. Jasper, supra; State v. Shuler, 486 S.W.2d 505 (Mo.1972)." State v. Chambers, 524 S.W.2d 826 (Mo. banc 1975).[3] As Higgins, J., pointed out in State v. Jewell, 473 S.W.2d 734, 738 (Mo.1971), "so-called felony murder is not a separate and distinct offense . . . ." (emphasis added)

Prior to 1975, Missouri's first degree statute provided as follows:

Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree. Section 559.010, RSMo 1969 (repealed).

This statute contained the basic elements of what is presently capital murder [§ 565.-001, RSMo 1978] and those in present first degree murder [§ 565.003, RSMo 1978]. Under the former first degree murder statute there were two basic methods of proving the requisite mental state. In conventional first degree murder, the deliberation and premeditation necessary to authorize a conviction could be inferred from the facts and circumstances of the killing. State v. Lindsey, 507 S.W.2d 1, 4 (Mo. banc 1974). On the other hand, if the felony murder doctrine was used, then proof of the commission of one of the enumerated felonies in the statute stood in lieu of showing the required state of mind. " . . . [T]he turpitude of the criminal act supplies the place of deliberate and premeditated malice and is its legal equivalent, and the purpose to kill is conclusively presumed from the intention which is the essence of the criminal act intended." Wharton, supra at 173–74.

The first degree murder statute currently in effect in Missouri provides that "any person who unlawfully kills another human being without a premeditated intent to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was committed in the perpetration or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping." Section 565.003, RSMo 1978. This statute modifies the common law felony

3. The Court in State v. Morgan, 592 S.W.2d 796 (Mo. banc 1980), limited Chambers in order to avoid what it deemed a Double Jeopardy issue under the U.S. Constitution where there was a single prosecution for the felony and the felony murder. The judgment was vacated by the United States Supreme Court and remanded with directions. 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980). In Morgan II, 612 S.W.2d 1 (Mo. banc 1981), the Court followed State v. Olds, 603 S.W.2d 501 (Mo. banc 1980), which had held the Missouri Legislature did not intend separate and cumulative punishments for the underlying felony and for first degree (felony) murder, and set aside Morgan's conviction for stealing more than $50.00 but affirmed the judgment of second degree felony murder. For the latest pronouncement concerning Missouri's construction and application of the Double Jeopardy Clause, see Missouri v. Hunter, —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

murder rule somewhat in that it includes the phrase "... without a premeditated intent ...." Where the felony murder rule deemed intent to be present, the Legislature has provided that the only requirement is the proof of one of the named felonies. The accused need not have intended the killing, but must have the intent to commit the felony. *State v. Newman,* 605 S.W.2d 781, 786 (Mo.1980).

Unlike the first degree murder statute, our second degree murder statute has remained the same since 1835. R.S. 1835, § 2, p. 167. The current statute is § 565.004, RSMo 1978, which provides that *"All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree."* (our emphasis)

All other kinds of murder at common law remaining would be the following: (1) Intentional murder, nondeliberate, and (2) homicides committed in the perpetration of or attempt to perpetrate *any* felony other than the five listed in the first degree murder statute. Note 3, Notes on Use, MAI–CR 2d 15.16. (Our emphasis)

■ Like the pre-1975 first degree murder, although second degree murder is a single crime, the requisite mental state (willful, premeditated killing with malice aforethought) can be proved by either of two methods. In conventional second degree murder, the facts and circumstances of the killing can provide the factual basis for the jury's belief that the accused killed another with malice aforethought and premeditation. *State v. Powell,* 630 S.W.2d 168 (Mo.App.1982); *State v. Black,* 611 S.W.2d 236 (Mo.App.1980). In second degree felony murder the commission of a felony (which is not one of those designated in the first degree murder statute) provides the means of proving the requisite state of mind. *State v. Chambers, supra* at 829.

Although the Legislature modified the former first degree murder statute so as to dispense with "premeditated intent", and by enacting that statute in its present form makes the crime a separate and substantive offense, it did not choose to do the same with second degree murder and, consequently, the felony murder rule is still viable in its true form under the current second degree murder statute. Statements in recent cases implying second degree felony murder is a separate substantive offense [4] are refuted by the history of the felony murder doctrine, the case law of this State, and the decision of the Legislature to continue to define second degree murder as "All other kinds of murder at common law ...."

As regards defendant Clark, the felony murder rule was properly used to convict him of second degree murder. Although the indictment charged capital murder, § 556.046, RSMo 1978, provides that a defendant may be convicted of an offense included in an offense charged in the indictment or information.

Case law clearly establishes that second degree murder is a lesser included offense of capital murder. In *State v. Hills,* 645 S.W.2d 57 (Mo.App.1982), defendant was charged with capital murder and convicted of second degree murder. The defendant challenged this conviction, but the court affirmed, holding that "second degree murder is a lesser included offense of capital murder." The authority cited in reaching this conclusion is *State v. Haymon,* 616 S.W.2d 805 (Mo. banc 1981), *cert. denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981).

*Haymon* involved a challenge to a conviction of second degree murder under a charge of capital murder. In affirming the conviction this Court stated that "[d]efendant remained charged with capital murder and it is well established that a second degree murder instruction may be given under a charge of capital murder. It is a lesser included offense. *State v. Strickland,*

---

4. *State v. Morgan,* 592 S.W.2d 796 (Mo. banc 1980); *State v. Olds,* 603 S.W.2d 501 (Mo. banc 1980), Seiler, J., concurring at 511; *State v.* *Mannon,* 637 S.W.2d 674, 678 (Mo. banc 1982); *State v. Mansfield,* 637 S.W.2d 699, 704 (Mo. banc 1982).

609 S.W.2d 392 (Mo. banc 1980); *State v. Amos,* 553 S.W.2d 700 (Mo. banc 1977)." at 808.

■ Defendant was properly convicted of second degree murder (§ 565.004) by use of the felony murder rule. The rule itself is merely a tool which provides an alternate method of proving the required mental state under a charge of murder. Second degree felony murder is not a separate and substantive offense and should not be construed as such in the absence of a Legislative provision so stating. Having been indicted on capital murder, defendant could properly be convicted of all lesser included offenses, one of which is second degree murder (§ 565.004), *State v. Hill, supra.*[5]

■ The trial court is necessarily vested with broad discretion in ruling evidentiary matters. We have reviewed defendant's assignments of error concerning his cross-examination and find no abuse of discretion by the court. *State v. Whipkey,* 358 Mo. 563, 215 S.W.2d 492 (Mo.1948). Further, no prejudice to the defendant has been demonstrated. *State v. Wickizer,* 583 S.W.2d 519 (Mo. banc 1979).

■ Defendant's complaint regarding the testimony of State's witness Cook was not mentioned in his motion for a new trial and is not preserved for our review. Rule 29.-11(d); *State v. Emerson,* 623 S.W.2d 252 (Mo.1981).

■ Defendant also contends it was error for the court to instruct on capital murder. Because he was not convicted of that offense, defendant is in no position to assign error to the giving of this instruction. *State v. Mudgett,* 531 S.W.2d 275 (Mo. banc 1975).

The judgment is affirmed.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

[5] A scholarly and comprehensive analysis of the homicide law of Missouri, including the problems of included offenses and "instructing down", is scheduled for publication in a forthcoming issue of the Missouri Law Review. Honorable Paul N. Venker, former research attorney for this Court and former law clerk for former Chief Justice Donnelly, is the author.

BLACKMAR, Judge, concurring.

I concur in the principal opinion.

Any suggestion that the defendant was not duly notified of the charge against him is answered by *State v. Goddard,* 649 S.W.2d 882 (Mo. banc 1983), recently decided by this Court. The defendant was charged in the manner which has been customary in Missouri for many, many years, and the manner of charging has been consistently upheld as against due process challenges.