**STATE of Missouri,
Plaintiff-Respondent,**

v.

**John BISHOP, Defendant-Appellant.**

No. 14053.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 31, 1985.

Motion for Rehearing or to Transfer to
Supreme Court
Denied Jan. 21, 1986.

Application to Transfer Denied
March 25, 1986.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Donald R. Cooley, Springfield, for defendant-appellant.

GREENE, Judge.

Defendant, John Bishop, was jury-convicted of second degree burglary, § 569.-170,[1] and stealing, § 570.030. The jury recommended one-year jail sentences for each offense, but the trial court paroled Bishop on the condition that he pay a $5,000 fine

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

on each charge, and make restitution of $34,250 to the victim of the burglary.

On appeal, Bishop claims that the evidence introduced at trial by the state was insufficient to support the convictions.

Viewed in the light most favorable to the state, the evidence and reasonable inferences to be drawn therefrom show that in August of 1983, John Bishop, Ronald Stone and Kenneth Winningham were members of a burglary ring operating in the Carthage, Missouri area. Bishop, by reason of his familiarity with the area and association with its residents, furnished Winningham details concerning the location of target houses, articles of value contained therein, habits of the occupants, etc. Winningham would then go to the home described by Bishop, break in, steal the items and take them to either Stone, who operated the Gold and Silver Exchange in Joplin, or to Bishop. Stone or Bishop would sell the merchandise and the proceeds were shared by the three.

In August of 1983, Bishop gave Winningham the location of the home of Joe Miller, a Carthage businessman. He told Winningham that Miller had a silver tea service and "different articles of value," and that the Millers were away from home frequently. Armed with this information, Winningham, on August 31, broke into the Miller residence, stole the silver tea service, a pistol and other valuable articles. He took the tea set to Stone. Stone paid Winningham $1,400, which was the "melt down" price for the tea service, and later sold it.

On December 22, 1983, Stone, who had been arrested in connection with his burglary ring activities and released on bond, had a telephone conversation with Bishop, which was recorded surreptitiously by Stone. In this conversation, Bishop warned Stone to be careful when disposing of the tea service, as it could be "numbered and marked." He also said, "Don't let Kenny (meaning Winningham) get out of there without cutting us in; it's my job."

Winningham and Stone testified as state witnesses at trial and implicated Bishop as a member of the burglary ring that planned and executed the Miller burglary. Section 562.041.1(2) states that a person is criminally responsible for the conduct of another when "[e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense."

■ Even though Winningham personally committed the burglary and stole the silver tea service, Bishop was criminally responsible for Winningham's conduct since Bishop actively participated in the crime by aiding the burglary through providing information regarding the location of the home, the fact that the Millers were away from home a great deal, and that a silver tea service was kept in the house. A defendant who aids and encourages another to commit a crime may be convicted of that offense, even though not physically present at the time of the commission of the crime. *State v. Hills*, 645 S.W.2d 57, 59 (Mo.App.1982). The evidence was sufficient to sustain Bishop's convictions of burglary and stealing.

In his remaining point, Bishop asserts that the trial court erred in refusing to suppress the taped telephone conversation and in admitting it into evidence, over objection, because it violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. He claims that at the time of the taped conversation, Stone was, in effect, a government agent by having agreed to be a state witness against Bishop, and for that reason, was barred from encouraging Bishop to make incriminating statements tying him to the Miller burglary.

■ Bishop's brief does not contain any citation of authorities in support of his claim of a Fifth Amendment violation, and he does not explain why authority for his position is not available, if such is the case. Bishop has waived any Fifth Amendment violation claim by failure to supply us with authorities in support of his position, or show why precedent was unavailable.

Rule 30.06(d); *State v. Bailey,* 672 S.W.2d 682, 683 (Mo.App.1983).

In support of his Sixth Amendment violation claim, Bishop cites *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). Neither case is applicable to the fact situation presented in the present case.

*Massiah* holds that it was a violation of Massiah's Sixth Amendment right to counsel for the government to introduce at trial evidence of Massiah's incriminating statements deliberately elicited by federal undercover agents after Massiah's indictment and release on bond since his counsel was not present. *Henry* holds that it was error to permit the government to introduce at trial incriminating statements made by Henry to his cellmate, who was an undisclosed government informer, after Henry's indictment, and while he was in custody. In both *Massiah* and *Henry,* the defendants had been formally charged with a crime before the offending conversations took place. Here, even if we assume that Stone was a government informant, and had been recruited by the police in order to engage Bishop in an incriminating conversation, which activity Stone denied at trial, saying the recording of the conversation was his own idea, there is no evidence that criminal charges arising out of the Miller burglary had been filed against Bishop before his telephone conversation with Stone. In fact, the record indicates the opposite is true. The conversation occurred on December 22. Bishop was not indicted for the Miller burglary until December 28. The rationale of *Massiah* and *Henry* does not apply here, as the Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972). *See also, State v. Buckles,* 636 S.W.2d 914, 922 (Mo. banc 1982) (right to counsel attaches at pleading stage). The point has no merit.

Judgment affirmed.

TITUS, P.J., and CROW, J., concur.

FLANIGAN, J., recused.